STRADLING YOCCA CARLSON & RAUTH, P.C.
Paul R. Glassman (State Bar No. 76536)
Tatiana Ingman (State Bar No. 314284)
10100 Santa Monica Blvd., Suite 1400
Los Angeles, CA 90067
Telephone: (424) 214-7000
Facsimile: (424) 214-7010
E-mail: pglassman@stradlinglaw.com
          tingman@stradlinglaw.com

Attorneys for Genautica Oil Holdings, LP

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENAUTICA OIL HOLDINGS, LP<br><br>                                      Appellant<br><br>v.<br><br>TEMBLOR PETROLEUM COMPANY, LLC<br><br>                                      Appellee | District Court Case No. 22-1507<br><br>**DECLARATION OF PAUL GLASSMAN IN SUPPORT OF NOTICE OF INDICATIVE RULING AND *EX PARTE APPLICATION* FOR REMAND TO THE BANKRUPTCY COURT AND TO CONTINUE THE BRIEFING SCHEDULE**<br><br>[No hearing required] |
| In re<br><br>TEMBLOR PETROLEUM COMPANY, LLC<br><br>                                      Debtor. | On Appeal from Bankruptcy Court<br><br>Case No. 2020-11367<br><br>Chapter 7 |

I, Paul R. Glassman, declare as follows:

1.     I am an attorney licensed to practice law in the State of California.  I am a shareholder in the firm of Stradling, Yocca, Carlson & Rauth, a Professional Corporation, counsel of record for Genautica Oil Holdings, LP ("Genautica") in this case.  I have personal knowledge of the facts set forth below, and if called as a witness in this matter, would competently testify thereto.

2.     I make this declaration in support of the *Notice of Indicative Ruling and Ex Parte Application for Request for Remand to the Bankruptcy Court* (the "Application").  Capitalized terms that are not defined herein are defined in the Application.

3.     On April 6, 2023, the Bankruptcy Court issued a ruling finding that the Genautica's Motion to Vacate the Sale Order as Amended [Bankr. Dkt. 500] raises a substantial issue with regard to the propriety of the auction of debtor Temblor Petroleum Company LLC's ("Debtor's") working interest (the "Working Interest") in an oil field referred to as Hangman Hollow. A true and correct copy of the Bankruptcy Court's April 6 Ruling is attached hereto as Exhibit A.

4.     On August 10, 2023, the United States Bankruptcy Court for the Eastern District of California (the "Bankruptcy Court") conducted an auction of the Working Interest.

5.     On August 19, 2022, the Bankruptcy Court entered *its Order on Motion to Sell Estate's Interest in Property Pursuant to 11 U.S.C. Section 363(b)* [Dkt. No. 432].

6.     On November 3, 2022, the Bankruptcy Court entered its A*mended Order on the Motion to Sell Estate's Interest in Property Pursuant to 11 U.S.C. Section 363(b)* [Dkt. 473] (the "Amended Sale Order") upon the ex parte application of the chapter 7 trustee (the "Chapter 7 Trustee") appointed in the bankruptcy proceeding.

7.     After the auction, when the irregularities came to light, Genautica revised its bid and submitted a new bid that was still higher than Trio's stalking horse bid. The Bankruptcy Court entered the Amended Sale Order before Genautica even received notice that such ex parte application had been filed. On November 17, 2023, Genautica appealed the entry of the Amended Sale Order to this Court.

8.     On February 2, 2023, Genautica filed its *Motion to Vacate Sale Order, as Amended* [Bankr. Dkt. No. 500](the "Motion") requesting that the Bankruptcy Court vacate its prior orders due to irregularities in the sale and auction process. The Motion was supported by the Declaration of Dan Scholefield [Bankr. Dkt. 501] (the "Scholefield Decl.") and the Exhibits thereto [Bankr. Dkt. 502](the "Exhibits").  A true and correct copy of the Motion, the Scholefield Decl. and the Exhibits is attached hereto as Exhibits B, C and D respectively.

9.     On March 23, 2023, Trio Petroleum LLC ("Trio") filed a pro se opposition to the Motion.

10.    Genautica gave notice by e-mail of the Ex Parte Application to counsel to the Debtor, counsel to the Chapter 7 Trustee and Trio, who are the most directly affected by the relief requested. Genautica has been advised by counsel to the Debtor and counsel to the Chapter 7 Trustee that each has no opposition to the requested relief. Trio has not responded to my email and has not appeared in the bankruptcy proceeding or this appellate proceeding through counsel.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 12, 2023 in Los Angeles, California.


*/s/ Paul R. Glassman*
Paul R. Glassman

# EXHIBIT A

Doc # 514 - Bankruptcy Court's April 6 Ruling

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**CIVIL MINUTES**

---

**Case Title:** TEMBLOR PETROLEUM      **Case No.:** 20-11367 - A - 7
COMPANY, LLC

                                           **Docket Control No.** PRG-1

                                           **Date:** 04/06/2023
                                           **Time:** 10:00 AM

**Matter:** [500] - Motion/Application to Vacate [PRG-1] Filed by
Interested Party Genautica Oil Holdings, LP (jlns) [500] - Notice of
Hearing Re: [500] Motion/Application to Vacate [PRG-1] to be held on
3/9/2023 at 10:00 AM at Bakersfield Federal Courthouse. (jlns)

**Judge: Jennifer E. Niemann**
**Courtroom Deputy: Bethany Soto**
**Reporter: Electronic Record**
**Department: A**

---

**APPEARANCES for:**
**Movant(s):**


**Respondent(s):**


---

**CIVIL MINUTES**


Motion Neither Granted nor Denied

The court will issue an order.

This motion was set for hearing on 28 days' notice as required by
Local Rule of Practice ("LBR") 9014-1(f)(1). On March 23, 2023, the
vice president for Trio Petroleum LLC, ("Trio") timely filed written
opposition together with a supporting declaration (collectively,
"Response"). Doc. ##510-512. The failure of creditors, the
U.S. Trustee, or any other party in interest to file written
opposition at least 14 days prior to the hearing as required by
LBR 9014-1(f)(1)(B) may be deemed a waiver of any opposition to the
granting of the motion. Cf. Ghazali v. Moran, 46 F.3d 52, 53 (9th Cir.
1995). Therefore, the defaults of the non-responding parties in
interest were entered.

As a procedural matter, the notice of motion does not comply with
LBR 9004-2(c)(1), which requires a notice of hearing on a motion to be
filed as a separate document. Here, the notice of motion and motion
were filed as a single document. Doc. #500. The notice of motion also

does not comply with LBR 9014-1(d)(3)(B)(iii), which requires the notice to advise respondents that they can determine whether the matter has been resolved without oral argument or whether the court has issued a tentative ruling by viewing the court's website at www.caeb.uscourts.gov after 4:00 p.m. the day before the hearing, and that parties appearing telephonically must view the pre-hearing dispositions prior to the hearing. Additionally, the motion and memorandum of points and authorities may only be combined as a single document if six pages or less. LBR 9014-1(d)(4).

As a further procedural matter, the exhibit document filed with the motion (Doc. #502) does not comply with LBR 9004-2(d)(2), which requires that "[e]ach exhibit document filed shall have an index at the start of the document that lists and identifies by exhibit number/letter each exhibit individually and shall state the page number at which it is found within the exhibit document." The exhibit document filed with the motion does not include the required exhibit index.

As a further procedural matter, the certificate of service filed in connection with the reply (Doc. #513) does not comply with LBR 7005-1 and General Order 22-03, which require attorneys and trustees to use the court's Official Certificate of Service Form as of November 1, 2022.

The court encourages counsel for the moving party to review the local rules to ensure compliance in future matters or those matters may be denied without prejudice for failure to comply with the local rules. The rules can be accessed on the court's website at https://www.caeb.uscourts.gov/LocalRules.aspx.

As a further procedural matter, the court is inclined to strike Trio's Response because Trio is a limited liability company and is not represented by counsel. Under applicable legal authority, a limited liability company cannot appear in this bankruptcy case without assistance of legal counsel. The Ninth Circuit has held that "[c]orporations and other unincorporated associations must appear in court through an attorney." Licht v. America W. Airlines (In re America W. Airlines), 40 F.3d 1058, 1059 (9th Cir. 1994); see also Orsini v. Interiors of Yesterday, LLC (In re Interiors of Yesterday, LLC), 284 B.R. 19, 23-26 (Bankr. D. Conn. 2002) (requiring limited liability company to file bankruptcy petition through counsel). Here, Steven A. Rowlee signed Trio's opposition as Trio's vice president. Doc. #510. There is no indication that Mr. Rowlee is authorized to practice law before this court. To the extent Mr. Rowlee is attempting to represent Trio in this bankruptcy case, "[a] person not an active member of the State Bar who practices law commits a misdemeanor." Gerhard v. Stephens, 68 Cal. 2d 864, 917-18 (1968); Cal. Bus. & Prof. Code § 6126(a). If Trio wishes to oppose a motion in this bankruptcy case, Trio must appear through an attorney.

By this motion ("Motion"), Genautica Oil Holdings, LP ("Movant") seeks
to vacate an order that currently is the subject of an appeal to the
United States District Court for the Eastern District of California
("District Court"). Motion, Doc. #500. Specifically, on August 10,
2022, this court held an auction of the 24.22% interest of the debtor,
Temblor Petroleum Company, LLC, in an oil field known as Hangman's
Hollow ("Working Interest"). Id. Trio was a stalking horse bidder to
purchase the Working interest for $10,000.00, subject to higher and
better offers. Doc. #416. Prudent Resources was the winning bidder at
the August 10 auction for $101,000.00, with Movant as the back-up
bidder for $86,000.00. Doc. #431.

On August 19, 2022, the court entered an order authorizing the sale of
the Working Interest to Prudent Resources as the winning bidder and to
Movant as the back-up bidder ("Sale Order"). Doc. #432. Neither
Prudent Resources nor Movant completed the sale as set forth in the
Sale Order. Decl. of Jeffrey M. Vetter, Doc. #471. On November 3,
2022, the court granted the chapter 7 trustee's ex parte motion to
amend the Sale Order and authorized the sale of the Working Interest
to Trio for $10,000.00 ("Amended Order"). Doc. #473. On November 17,
2022, Movant appealed the Amended Order to the District Court.
Doc. #481. Movant filed the Motion on February 2, 2023. Doc. #500.

Movant seeks to vacate the Sale Order and the Amended Order pursuant
to Federal Rules of Civil Procedure ("Civil Rule") 60(b)(1) and
(b)(6), incorporated into this matter by Federal Rule of Bankruptcy
Procedure ("Rule") 9024. Movant asserts that neither Movant nor
Prudent Resources knew at the time of the auction that the sale of the
Working Interest was "as is" and subject to the debtor's liabilities
with respect to the Working interest, including substantial claims
asserted by Trio, and Movant only learned this information after the
auction. Decl. of Dan Scholefield, Doc. #501. Movant also contends
that representations of the broker and the marketing materials related
to the Working Interest contained material mistakes of fact as to the
status of the Working Interests that Movant learned about only after
the auction. Id. On this basis, Movant requests that this court vacate
the sale of the Working Interest and reopen the auction. Motion,
Doc. #481.

"The filing of a notice of appeal is an event of jurisdictional
significance - it confers jurisdiction on the court of appeals and
divests the district court of its control over those aspects of the
case involved in the appeal." Griggs v. Provident Consumer Disc. Co.,
459 U.S. 56, 58 (1982) (per curiam). Here, the court lacks authority
to consider Movant's motion for reconsideration under Civil
Rules 60(b)(1) and 60(b)(6) because such authority has been divested
by the appeal of the Amended Order to the District Court.

However, Rule 8008 "provides a procedure for the issuance of an
indicative ruling when a bankruptcy court determines that, because of
a pending appeal, the court lacks jurisdiction to grant a request for
relief that the court concludes is meritorious or raises a substantial

issue." Fed. R. Bankr. P. 8008 Advisory Committee Note to 2014
Amendment. Rule 8008 applies "when a post judgment motion – such as a
motion for relief from judgment under Civil Rule 60(b) made more than
14 days after entry of the judgment – which does not suspend the time
for filing a notice of appeal – is made in the bankruptcy court at a
time when a pending appeal has deprived the bankruptcy court of
jurisdiction to decide the motion." 10 COLLIER ON BANKRUPTCY ¶ 8008.01
(Richard Levin & Henry J. Sommer eds., 16th ed.). Under Rule 8008,
"[i]f a party files a timely motion in the bankruptcy court for relief
that the court lacks authority to grant because of an appeal that has
been docketed and is pending," Rule 8008(a)(3) allows the bankruptcy
court to inform an appellate court that the motion raises a
substantial issue. Fed. R. Bankr. P. 8008(a).

For the reasons set forth above, the court informs the District Court
that the court finds that the Motion raises a substantial issue with
respect to the propriety of the auction of the Working Interest that
underlies the Amended Order that is currently on appeal.

# EXHIBIT B

Doc # 500 - Motion to Vacate

STRADLING YOCCA CARLSON & RAUTH, P.C.
Paul R. Glassman (State Bar No. 76536)
Tatiana Ingman (State Bar No. 314284)
10100 Santa Monica Blvd., Suite 1400
Los Angeles, CA 90067
Telephone: (424) 214-7000
Facsimile: (424) 214-7010
E-mail: pglassman@stradlinglaw.com
         tingman@stradlinglaw.com

Attorneys for Genautica Oil Holdings, LP

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 2020-11367 |
| TEMBLOR PETROLEUM COMPANY, LLC | Chapter 7 |
| Debtor. | DCN Number PRG-1 |
| | **NOTICE OF MOTION AND MOTION OF GENAUTICA OIL HOLDINGS, LP TO VACATE SALE ORDER, AS AMENDED** |
| | Hearing |
| | Date: March 9, 2023 |
| | Time: 10:00 a.m. |
| | Place: U.S. Courthouse |
| |        510 19th Street |
| |        Bakersfield, CA 93301 |
| | Judge: Hon. Jennifer Niemann |

**TO THE HONORABLE JENNIFER NIEMANN, UNITED STATES BANKRUPTCY JUDGE AND ALL PARTIES IN INTEREST**:

**PLEASE TAKE NOTICE** that Genautica Oil Holdings, LP ("Genautica") hereby moves the Court (the "Motion") for entry of an order pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure and Section 105 of title 11 of the United States Code vacating the Court's *Order on Motion to Sell Estate's Interest in Property Pursuant to 11 U.S.C Section 363(b) (Debtor's Working Interest Hangman Hollow Field, Monterey County, CA)* entered August 19, 2022 [Dkt. No. 432] and *Amended Order on Motion to Sell Estate's Interest in Property Pursuant to 11 U.S.C. Section 363(b) (Debtor's Working Interest Hangman Hollow Field, Monterey County, CA)* [Dkt. 473] entered November 3, 2022 on the grounds of mistake and to avoid manifest justice because (i) the bidders were induced to overbid based on the Brokers'[1] misstatements of fact (in which Trio is, at the very minimum, complicit); (ii) the bidders were bidding based on different, material, sales terms (namely whether or not the Property is free and clear of Trio's purported hundreds of thousands of dollars of claims); and (iii) the record is clear that a renewed auction of the Property would yield at least 50% more than Trio's stalking horse bid.  Genautica respectfully requests that the Court reopen the auction so that the bidders can submit their bids in a fair and equitable process, for the benefit of the Debtor's estate..

In support of the Motion, Genautica files a Memorandum of Points and Authorities and Declaration of Dan Scholefield concurrently herewith.

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will be held before the Honorable Jennifer E. Niemann, United States Bankruptcy Judge, via ZOOM and via Telephone, at 510 19th Street, Bakersfield, California 93301 (the "Bankruptcy Court") on March 9, 2023 at 10:00 a.m. (the "Hearing").  The Motion is based upon this notice of motion and Motion, the attached memorandum of points and authorities, the attached declaration of Dan Scholefield, the arguments of counsel, the record in this case, and other admissible evidence properly brought before the Court at or before the Hearing.

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Memorandum of Points and Authorities filed in the support of the Motion.

**PLEASE TAKE FURTHER NOTICE** that Local Bankruptcy Rule 9014-1(f) requires that any party opposing the Motion must file and serve a written response at least 14 days before the Hearing. Pursuant to 9014-1(f), the Bankruptcy Court may deem the failure to timely file and serve an opposition a waiver of such opposition.

Dated: February 1, 2023         STRADLING YOCCA CARLSON & RAUTH, P.C.

By:    */s/ Paul R Glassman*          
                 Paul R. Glassman
                 Tatiana Ingman
                 Attorneys for Genautica Oil Holdings, LP

### <u>MEMORANDUM OF POINTS OF AUTHORITIES</u>

Genautica Oil Holdings, LP ("Genautica") moves the Court to vacate its *Order on Motion to Sell Estate's Interest in Property Pursuant to 11 U.S.C Section 363(b) (Debtor's Working Interest Hangman Hollow Field, Monterey County, CA)* entered August 19, 2022 [Dkt. No. 432] (the "Sale Order") and *Amended Order on Motion to Sell Estate's Interest in Property Pursuant to 11 U.S.C. Section 363(b) (Debtor's Working Interest Hangman Hollow Field, Monterey County, CA)* [Dkt. 473] dated November 3, 2022 (the "Amended Order") pursuant to Rule 9024 of the Federal Rules of the Bankruptcy Procedure, and section 105(a) of title 11 of the United States Code §§ 101-1532 (the "Bankruptcy Code"). In support of its Motion, Genautica respectfully represents as follows:

### INTRODUCTION

Genautica moves the Court to vacate the Sale Order, as amended, and reopen the auction held on August 10, 2022 of the Debtor's 24.22% interest (the "Property") in an oil field known as Hangman's Hollow (the "Project") because the Brokers' (defined below) mistakes and misstatements of fact impaired the sale process and tarnished its results.

First, the Brokers told the bidders that the Project was ready to produce oil, which is a material representation that the bidders relied on in submitting their bids. However, that representation was incorrect. Rather than being ready to produce oil, the Project has been stalled since 2018, and is many years and dollars away from producing.

Next, the only two bidders at auction were given different sale terms by the Trustee (defined below) and the Brokers. The procedures given to Genautica stated that the sale was "as is" and "subject to" the Debtor's liabilities. The procedures given to Prudent Resources ("Prudent"), did not. As a result, the two bidders bid on different, conflicting, material sale terms. The difference is especially material because the Project operator, Trio Petroleum LLC ("Trio") may assert substantial claims against the Property, which claims Genautica disputes.

When the bidders learned that the Project was in fact not ready to produce, but rather was stalled at the permitting stage, and Prudent learned that the Property was being sold subject to

4

Trio's purported claims against the Property, the bidders withdrew their bids. But rather than reopen the auction, the Trustee, believing he had no other option, moved to amend the Sale Order and award the Property to Trio, who in addition to being the operator of the Property was the stalking horse bidder. Trio did not bid at the auction; Trio's stalking horse bid is the lowest bid for the Property; Trio failed to obtain the necessary permits to let the Project proceed; Trio failed to disclose that the Project was stalled; Trio is asserting claims against the Property that Genautica believes are unfounded; and Trio asked CalGEM (defined below) to prioritize Trio's other projects over this one. Furthermore, in 2021, Trio told Genautica that the Project could deliver oil "tomorrow," which, as Genautica only recently learned, was not correct.

Genautica respectfully submits that when the mistakes and irregularities were discovered, the Trustee should have reopened the auction to submit the Property to fair and equitable competitive bidding for the benefit of the estate. Even after it withdrew its bid, Genautica remained and remains willing to purchase the Property for no less than 50% more than the stalking horse bid. By moving to amend the Sale Order and asking the Court to award the Property to Trio, the Trustee actually sought approval of the sale to the **lowest** bidder, and was manifestly not in the best interest of the estate.

Accordingly, pursuant to Federal Rule of Bankruptcy Procedure 9024 and the Court's inherent authority to modify its orders under section 105(a) of title 11 of the United States Code, Genautica respectfully requests that the Court vacate the Sale Order, as amended, on the grounds of mistake and to avoid manifest injustice because (i) the bidders were induced to overbid based on the Brokers' misstatements of fact (in which Trio is, at the very minimum, complicit); (ii) the bidders were bidding based on different, material, sales terms (namely whether or not the Property is free and clear of Trio's purported hundreds of thousands of dollars of claims); and (iii) the record is clear that a renewed auction of the Property would yield at least 50% more than Trio's stalking horse bid. Genautica respectfully requests that the Court reopen the auction so that the bidders can submit their bids in a fair and equitable process, for the benefit of the Debtor's estate.

## FACTUAL BACKGROUND

**General Background**

Debtor Temblor Petroleum Company, LLC's (the "Debtor") commenced this bankruptcy proceeding under chapter 11 of the Bankruptcy Code on April 4, 2020. On September 30, 2020, the Debtor employed Energy Advisors Group as brokers (the "Brokers") to assist in the sale of the Debtor's assets which included interests in several oil fields. On May 5, 2021, the case was converted to chapter 7 because the Debtor was unable to confirm a chapter 11 plan. Jeffrey M. Vetter was appointed chapter 7 trustee (the "Trustee") and proceeded, with the Brokers, to market the Debtor's assets for sale for the benefit of creditors.

**The Hangman Hollow Project**

The Debtor holds a 24.44% working interest in an oil field project referred to as Hangman Hollow. Trio is the operator of the Project and its largest working interest holder, holding 43%. See Declaration of Dan Scholefield ("Scholefield Decl.") filed concurrently herewith, ¶3. The Debtor is the second largest working interest holder, and Genautica is a working interest holder having purchased its 12.22% interest from both Trio and the Debtor (collectively) in 2013. Id. Acquisition of the Property would give Trio majority control of the Project. Id. at ¶4. In 2021, Trio's chairman told Genautica that the Project could start producing oil "tomorrow." Id. at ¶3.

**The Sale Process**

Prior to the sale hearing and auction, the Brokers marketed the Property for sale. Scholefield Decl. at ¶9. In the weeks leading up to the auction, Genautica had telephone calls with Wesley Adams ("Adams"), the representative of the Brokers handling the sale, regarding the status of the Project and conditions of the sale. During those conversations, it was represented that the Project was ready to produce oil. The Brokers' statements seemed to confirm what Trio told Genautica in 2021. Genautica was later told by Kris Pitta ("Pitta") of Prudent Resources that he had had similar conversations prior to the auction. The representation that the Project is ready to produce oil is crucial to the value of the Property, and Prudent and Genautica relied on this representation in formulating their bids at the auction. However, this representation is incorrect. Scholefield Decl. at ¶9.

The Brokers posted promotional materials on their website. Scholefield Decl. at ¶10.
Consistent with the Brokers' statements that the property was ready to produce, the marketing
materials were posted on the Brokers' website under the category "Producing Properties."
Scholefield Decl. at ¶11; Scholefield Decl. Exh. C (Energy Advisors Group Promotional Materials
downloaded October 8, 2021, the "2021 Marketing Materials").

In describing the Project, the 2021 Marketing Materials state:

> The Hangman Hollow field is currently idled pending final approval of steam injection.
> Temblor recently received aquifer exemption to enable steam flood injection. The estate
> highlights 4.0 million barrels of original oil in place and 2.0 mm barrels recoverable."

At the top of the first page, in a section entitled "Recent Updates (5/21/21)" the materials state
"Hangman Hollow project just received steam injection permit." The marketing materials imply
that the permit that awaited final approval was recently approved as of May 21, 2021. The
information in the 2021 Marketing Materials further confirmed the Brokers' statement that the
Project was ready to produce. Id. at ¶ 12; Scholefield Decl. Exh. C (2021 Marketing Materials).

**The Sale Motion**

On June 16, 2022, prompted by the Trustee's notice of intent to abandon the Debtor's
interest in another oil field, Genautica wrote to the Trustee stating Genautica's interest in bidding
on the Property. Scholefield Decl. at ¶5.

On July 13, 2022, the Trustee filed a motion (the "Sale Motion") [Dkt. 416] to sell the
Debtor's 24.44% "Working Interest in Hangman Hollow Field, Monterey County, CA" (the
"Working Interest") to Trio Petroleum LLC ("Trio") as stalking horse bidder for $10,000, subject
to higher and better offers.

On August 2, 2022, Genautica submitted its $10,000 deposit to the Trustee. Scholefield
Decl. at ¶6.

On August 10, 2022, the Court held an auction of the Property at which Trio was present,
but did not bid. See Scholefield Decl. at ¶7; Scholefield Decl. Exh. A (Transcript of August 10,
2022 hearing).

On August 19, 2022, the Court entered the Sale Order [Dkt. 432] authorizing the sale of the Property to Prudent (a third party) for $101,000, over ten times Trio's stalking horse bid, and if Prudent was unable to complete the sale authorized therein within 30 days from the entry of the Sale Order, the Trustee was authorized to sell the estate's interest to Genautica for $86,000, over eight times Trio's stalking horse bid.

**Prudent and Genautica Learn that the Brokers Misstated that the Property was Ready to Produce Oil.**

Genautica and Prudent bid at the August 10th auction based on the representations of the Brokers that the Project was ready to produce oil, representations that we later learned were not correct. Scholefield Decl. at ¶8. After the Sale Order was entered, however, Genautica came to learn that the representation that Project was ready to produce oil was incorrect. Scholefield Decl. at ¶13. The Project is not producing or ready to produce oil; rather the Project is presently inoperable, the Project is likely one or more years away from being operable, and the Project will require significant further investment before becoming operable and before required approvals can be obtained. Id. In fact, Genautica has recently been advised by California Geologic Energy Management ("CalGEM") which is one of several regulatory bodies governing oil and gas in California, that comprehensive updates and reviews are required to reestablish Underground Injection Control ("UIC") related permits and proceed with several essential components of the Project including steam injection, oil and gas well production and storage, and proposed water disposal. Id. Furthermore, Genautica was informed that Trio instructed CalGEM to put the Project on the backburner and reassign its project review engineer to Trio's unrelated South Salinas prospect. Scholefield Decl. at ¶30.

Additionally, the materials prepared by the Brokers were inaccurate and misleading. Scholefield Decl. at ¶14. First, the representation that the Project was idled "pending final approval of the steam injection permit" is inaccurate. Id. The Project was idled because of an expensive, time-consuming permit updating and approval process involving the critical new water disposal well "WD-2" application. Scholefield Decl. at ¶14.

Next, while it is true in that in 2019 Trio obtained a steam injection permit, as indicated in an email dated September 13, 2022 from Pitta to the Trustee, in 2021, CalGEM provided written notice to Trio that the Project would need to undergo Project Approval Letter ("PAL") review. Scholefield Decl. at ¶15. Thus, the <u>injection permit was no longer current</u>. In other words, the representation in the marketing materials that the Project was idled pending *final* review of the injection permit was incorrect, the steam injection and/or water disposal permit needed to be brought current. Id.; Scholefield Decl. Exh. D (September 13, 2022 Email from Kris Pitta to the Trustee ("September 13 Email")).

Further, while the 2019 letter from CalGEM issuing the permit *was* provided to Prudent, the 2021 letter saying the Project would need to undergo PAL review *was not* provided to them until after the auction. Scholefield Decl. at ¶16; Scholefield Decl. Exh. D.

Finally, the representations in the marketing materials regarding the Debtor having received necessary aquifer exempt UIC permits are also incorrect. Scholefield Decl. at ¶17. Genautica only recently learned that the Project has been "on hold" by CalGEM since 2018 because the existing water disposal well is insufficient for the Project as planned. Id. In order to secure approvals and permits required to proceed, an updated project approval application must be submitted for approval and permitting to various governmental oversight agencies, none of which has happened nor is it certain to happen. Id.

Notably, in September 2022, after the auction, the marketing materials were updated to delete references to these permits and exemptions. Scholefield Decl. at ¶18.  The reference to the Project being idled "pending final approval of steam injection" was deleted; and the reference to "Temblor recently received aquifer exemption to enable steam flood injection" was also deleted. *Compare* Scholefield Decl. Exhs. C and F (2022 Marketing Materials).

The 2021 Marketing Materials contain information, including graphs and charts, that is not readily accessible to any entity other than Trio, as Operator of the Project. Scholefield Decl. ¶28. The information in the marketing materials must have come from Trio as operator of the Project. Id. Such information is unlikely to have come from any other source. Id.

9

Trio never informed Genautica, nor was Genautica informed by the Brokers or Trustee, that CalGEM put the water disposal well application on hold together with the entire PAL, or of any of the other challenges facing the Project, all of which was never disclosed by Trio. Scholefield Decl. at ¶29.

**The Bidders Submit Bids Based on Conflicting Terms of Sale**

During and after the auction, it became apparent that the Brokers were mistaken and confused about whether and to what extent Trio would assert claims against the Property. Scholefield Decl. at ¶19. As a result, the Trustee and Brokers provided the bidders with materially different terms of the sale, and the bidders bid at auction based on different terms.  Id. If for no other reason, the sale should be set aside due to the fact that the only two bidders competing in the auction were given different sets of bid instructions by the Brokers and Trustee; an auction was conducted in which bidders unknowingly were not bidding on the same terms, conditions, and/or assets. Id.

The Sale Motion states that the sale is to be "as is" and "subject to" charges attributed to the Debtor's share of the joint interest liabilities. Sale Motion ¶¶4(d), 6(i). The *Notice of Hearing on Motion to Sell Estate's Interest in Property Pursuant to 11 U.S.C. Section 363(b) (Debtor's Working Interest in Hangman Hallow Field Monterey County, CA)* (the "Sale Hearing Notice") [Dkt. 417], did not attach the Sale Motion, but described the terms of the sale. The Sale Hearing Notice included the procedures set forth in subparagraphs 6(a) through 6(h) of the Sale Motion but omitted subparagraph 6(i) stating that the sale was "as is". The Sale Hearing Notice contained no indication otherwise that the property was being sold "as is" and omitted any reference to the sale being "subject to" any interest or liabilities.

Thus, Adams represented to Genautica numerous times before and after the auction that Trio's claims would be extinguished or otherwise cut off against the buyer by the sale in the bankruptcy case. Scholefield Decl. at ¶20. Later, Genautica learned that the Adams had made the same representations to Prudent and that as a result, at the auction Prudent was bidding for the Property believing the Property would be transferred free and clear of Trio's purported interests. Id.

On August 17, 2022, after the auction, Genautica received a phone call from Adams in which Adams said that Prudent was upset that it was being asked to pay the Debtor's prior outstanding liabilities. Scholefield Decl. at ¶21. During the call, Scholefield stated that the bankruptcy papers said that the liabilities were included in the terms of sale, but the Broker disagreed. Id.  Accordingly, Scholefield sent Adams the Sale Motion, *the Declaration of Jeffrey M. Vetter in Support of Motion to Sell Estate's Interest in Property Pursuant to 11 U.S.C. Section 363(b) (Debtor's Working Interest Hangman Hollow Field, Monterey County, CA)* (the "Declaration") and the *Exhibit to Motion to Sell Estate's Interest in Property Pursuant to 11 U.S.C. Section 363(b) (Debtor's Working Interest Hangman Hollow Field, Monterey, [sic] County, CA*) (the "Exhibit") [Dkts, 416, 418, and 419] which had been sent to him (Scholefield) by the Trustee. Scholefield Decl. at ¶21; Scholefield Decl. Exh. G (August 17, 2022 Email exchange between Scholefield and Adams without attachments).  In response, Adams sent Scholefield the Notice of Hearing, Dkt. 417, which had been sent to him by the Trustee, and he stated that he had not seen the other documents. Id.

Adams told Scholefield that he relied on the Notice of Hearing which omitted any reference to the sale being subject to any other claims or interests, and that as a result, he believed that the sale would extinguish Trio's claim against the Debtor's working interest which would stay with the estate. Scholefield Decl. at ¶22.  Adams provided the Notice of Hearing to Prudent, namely Dkt. 417. Id.

**Prudent Bids Up The Property And Then Withdraws From The Bidding**

Relying on the misstatements to Prudent both as to the condition of the property and as to Prudent's potential for liability to Trio, Prudent bid up the Property to $101,000, 10 times Trio's stalking horse bid. Scholefield Decl. at ¶23. [2]  After the auction, Prudent learned that not only was the information about the permitting and status of the Project incorrect, but also that Trio would

---

[2] Notably, Trio's stalking horse bid was supported by only a $2,000 deposit, while the other bidders were required to post a deposit of $10,000. According to Trio's letter dated June 15, 2022, after a multi – year marketing process, Trio purportedly made its offer to purchase the Debtor's interest in the Project just one day before Genautica made its offer to purchase the interest to the Trustee.  [Compare Exhibit, Dkt. 419 *with* Exh. G, pgs. 4-5].

claim that Prudent would potentially be charged with the Debtor's pre-petition liabilities, despite the representations the bidders received to the contrary. Scholefield Decl. at ¶24.    Ultimately, Prudent pulled out of the sale. Scholefield Decl. at ¶21, 24, and Scholefield Decl. Exh. D (September 13 Email).  Had Prudent known of the true facts, it likely would not have participated in the auction. Id.

**Genautica Withdraws Its Auction Bid But States That It Is Willing To Continue With Its Purchase.**

Had Prudent not participated in the auction, Genautica's opening bid at $15,000 would have been the highest bid. Scholefield Decl. at ¶24.   Genautica is still interested in acquiring the Property, even though the true facts revealed that the Property was worth substantially less than previously thought. Id. at ¶25. Genautica offered to revise its bid to its opening bid amount ($15,000) and immediately close the transaction. Genautica remains willing to purchase the Property for $15,000 or to participate in a new auction for the purchase of the Property.  Id.

**The Trustee Moves Ex Parte to Amend the Sale Order to Authorize Sale to Trio, the Lowest Bidder**

Without addressing the issues raised regarding the conditions of the sale, on November 3, 2022, at 1:53 p.m., the Trustee filed the *Motion to Amend Order on Motion to Sell Estate's Interest in Property Pursuant to 11 U.S.C. Section 363(b)* [Dkt. 470] (the "Motion to Amend").  Contrary to rule 9014-1 of the Local Bankruptcy Rules of the Eastern District of California, the Motion to Amend was not set for hearing, there was no notice provided and no opportunity to object.  There was no exigency, no motion for shortened notice, no procedural safeguards.  The Court was not advised of the allegations of misstatements of fact by the Brokers, and that the Trustee received an offer to purchase the Property for $15,000 from Genautica, 50% more than Trio's stalking horse bid. At 2:28 p.m. <u>the same day</u>, the Court entered an order granting the Motion to Amend [Dkt. 473] (the "Amended Order").  At 3:54 p.m. the Motion to Amend was served on Genautica. Scholefield Decl. ¶26.

**Genautica Vehemently Objects to the Ex Parte Motion, Appeals from the Ex Parte Order, and Engages the Trustee in Negotiations**

The following day, November 4, Genautica wrote to the Trustee objecting to the relief sought in the Motion to Amend and reiterating its willingness to purchase the Property for $15,000. Scholefield Decl. at ¶26. Nevertheless, on November 14, 2022 prior to the expiration of the 14-day stay period under Rule 6004(h), the Trustee filed its *Amended Return on Sale* [Dkt. 478] reporting that the Property had been sold to Trio for $10,000, notice having been mailed to creditors and no objections having been received. However, as the Trustee advised the Court at the December 14, 2022 hearing, and has since confirmed to Genautica, the sale to Trio has not been consummated. On November 17, 2022, Genautica filed a Notice of Appeal of the Amended Order [Dkt. 481]. The schedule for briefing of the appeal was extended by the district court to allow for resolution of this Motion. [See District Ct. Case No. 22-1507, Dkt. 4, 5 and 7].

At the December 14 hearing on the Trustee's motion to abandon a different property, the Trustee indicated that he would consider filing a motion for relief from the Sale Order and putting the Debtor's interest in the Project back up for bid. Approximately two weeks ago, the Trustee advised Genautica that he had decided not to file a motion for relief from the Sale Order. However, the Trustee also made clear that he had no objection to Genautica filing such a motion and did not intend to take a position on the motion, subject to the need to correct the record in any respect.[3]

**Trio's Role**

As a result of the entry of the Amended Order, the Trustee proposes to sell the Debtor's interest in the Project to Trio. As the Operator of the Project, only Trio knew the true status of the Project, and the problems with the Project. Yet, Trio apparently failed to disclose these conditions to the Trustee. Indeed, Trio never informed Genautica, who, like the Debtor is a holder of a working-interest in the Project, and who has already significantly invested in this Project, that CalGEM put the water disposal well application on hold together with the entire PAL, or of any of the other challenges facing the Project, all of which was concealed by Trio. Scholefield Decl. at ¶29.

---

[3] The Trustee also agreed to hold off consummating the sale while this motion is being resolved.

1     In effect, Trio's silence regarding the representations in the marketing materials, caused

2 the parties to bid up the auction price which Trio thought would result in payment of its claims.

3 When the bidders discovered the true facts and failed to close on the purchase, Trio was awarded

4 the Property, giving itself a majority interest in the Project. This marred the sale process and left

5 the estate with less than it could get in a full and fair process.  This result is contrary to the letter

6 and spirit of the Bankruptcy Code and applicable federal and local rules of procedure and should

7 not be countenanced.

8     **JURISDICTION**

9     This court has jurisdiction over this motion pursuant to 28 USC §§ 1334 and 157 and, to

10 the extent applicable, Federal Rule of Bankruptcy Procedure 8008.

11

12     **ARGUMENT**

13     The Sale Order and Amended Order should be vacated pursuant to Federal Rule of Civil

14 Procedure 60, made applicable in bankruptcy by Rule 9024.  Rule 60(b) permits a bankruptcy court

15 to grant relief from a final judgment, order, or proceeding on six separate grounds, including, in

16 pertinent part, "(1) mistake, inadvertence, surprise, or excusable neglect"; and "(6) any other

17 reason that justifies relief." A Civil Rule 60(b) motion must be made "within a reasonable time."

18 Fed. R. Civ. P. 60(c). Civil Rule 60(b)(6) is to be liberally applied to accomplish justice. *Zurich*

19 *Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.),* 503 F.3d 933, 941 (9th Cir. 2007).

20     This motion was brought within a reasonable time because the sale to Trio has not closed,

21 and the Trustee has confirmed that he will not close the sale pending outcome of this motion, and

22 the parties investigated the facts and attempted informal resolution before turning to the Court.

23     Granting the requested relief is amply justified on the basis of mistake.

24     An auction in which the bidders bid based on material misstatements of fact, and on the

25 basis of conflicting terms and conditions of sale, is the tarnished opposite of the orderly sales

26 process envisioned by section 363 of the Bankruptcy Code. It is axiomatic that representations, if

27 made, must be true, and that bidders must bid on the same property and on same terms and

28

14

conditions. The auction process here did not meet those standards, and Genautica respectfully submits that correcting of this kind of situation is precisely what Rule 60 is intended to accomplish.

On the other hand, leaving the Sale Order, as amended, in place is manifestly unjust. The Sale Order, as amended, rewards Trio for submitting the lowest bid, not participating at the auction, not disclosing the true facts about the Project's permitting, or lack thereof. *See Redus Fla. Commercial, LLC v. Coll. Station Retail Ctr., LLC*, 777 F.3d 1187, 1194 n.14 (11th Cir. 2014) ("Although 'equity will not set aside a sale for mere inadequacy of price, it will do so if the inadequacy is so great as to shock the conscience or if there are additional circumstances against its fairness. . .'") (*quoting Gelfert v. Nat'l City Bank of N.Y.*, 313 U.S. 221 (1941)).

The injustice was compounded by the manner in which the Motion to Amend was filed, in violation of the local rules of this court, without an opportunity to be heard, and in the absence of any attenuating circumstances justifying the haste. *See In re Fisker Auto Holdings, Inc.,* 510 B.R. 55, 60 (Bankr. D. 2014)( secured lender precluded from credit bidding for cause under section 363(k), because, among other things the sale was being conducted with haste that was not justified under the circumstances and that did not allow time to discover the true facts).

Finally, the injustice is even further magnified because the result is detrimental to the estate. Genautica's offer for the Property is, and always has been, at a minimum, 50% higher than Trio's.

Accordingly, the Court should vacate the Sale Order and the Amended Sale Order, and reopen the bidding in the interests of justice and for the benefit of the estate.

**<u>CONCLUSION</u>**

For the foregoing reasons, Genautica respectfully requests that the Court vacate the Sale Order and the Amended Sale Order, reopen the auction of the Property, and grant such other and further relief as the Court deems just and proper.

DATED:  February 1, 2023                 STRADLING YOCCA CARLSON & RAUTH, P.C.


                                         By:    */s/ Paul R Glassman*
                                                Paul R. Glassman
                                                Tatiana Ingman
                                                Attorneys for Genautica Oil Holdings, LP

# PROOF OF SERVICE

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
10100 Santa Monica Blvd, Suite 1400, Los Angeles, CA 90067

A true and correct copy of the foregoing document NOTICE OF MOTION AND MOTION OF GENAUTICA OIL HOLDINGS, LP TO VACATE AMENDED ORDER will be served or was served (a) in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>February 2, 2023</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Leonard K. Welsh on behalf of Debtor TEMBLOR PETROLEUM COMPANY, LLC
lwelsh@lkwelshlaw.com; nmarin@lkwelshlaw.com

D. Max Gardner on behalf of Trustee Jeffrey M. Vetter
jeffreyvetter@hotmail.com; CA97@ecfcbis.com

D. Max Gardner on behalf of Trustee Jeffrey M. Vetter
dmgardner@dmaxlaw.com

Office of the U.S. Trustee
ustpregion17.fr.ecf@usdoj.gov

D. Keith B. Dunnagan on behalf of Creditor California Energy Exchange Corporation
kbdunnagan@bpelaw.com; sarahm@bpelaw.com

Leena M. Sheet on behalf of Creditor California State Lands Commission
Leena.Sheet@doj.ca.gov

Donald C. Oldaker on behalf of Creditor Eagle Petroleum Monterey, LLC
doldaker@clifford-brownlaw.com; kmharleston@clifford-brownlaw.com

Hyun Suk Choi on behalf of Creditor Eagle Petroleum Monterey, LLC
hchoi@choiandpark.com; lkleist@choiandpark.com

Donald C. Oldaker on behalf of Creditor Eagle Petroleum, LLC
doldaker@clifford-brownlaw.com; kmharleston@clifford-brownlaw.com

Hyun Suk Choi on behalf of Creditor Eagle Petroleum, LLC
hchoi@choiandpark.com; lkleist@choiandpark.com

Hyun Suk Choi on behalf of Creditor Hanwha Resources (USA) Corporation
hchoi@choiandpark.com; lkleist@choiandpark.com

Chris D. Kuhner on behalf of Creditor Inproinvest, LLC
c.kuhner@kornfieldlaw.com

John J. Harris on behalf of Creditor Kings County Development Limited
jharris@cassosparks.com; ldominguez@cassosparks.com

Thomas R. Phinney on behalf of Creditor Paul Graham Drilling
tom@parkinsonphinney.com; allison@parkinsonphinney.com

Michael N. Mills on behalf of Creditor Petro-Lud, Inc.
michael.mills@stoel.com; tammy.ross@stoel.com

Ashley Teesdale on behalf of Creditor Primoris Build Own and Operate LLC

ashley@ringstadlaw.com

Paul R. Glassman on behalf of Interested Party  Genautica Oil Holdings, LP
pglassman@stradlinglaw.com; cpesis@stradlinglaw.com

Justin C. Valencia on behalf of U.S. Trustee Tracy Hope Davis
justin.c.valencia@usdoj.gov

☐ Service information continued on attached page

**2.  <u>SERVED BY UNITED STATES MAIL</u>:**  On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows:

☐ Service information continued on attached page

**3.  <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u> (state method <u>for each person or entity served)</u>:**  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows:

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 2, 2023 | Christine Pesis | */s/ Christine Pesis* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

# EXHIBIT C

Doc # 501 - Declaration of Dan Scholefield in Support of Motion to Vacate

STRADLING YOCCA CARLSON & RAUTH, P.C.
Paul R. Glassman (State Bar No. 76536)
Tatiana Ingman (State Bar No. 314284)
10100 Santa Monica Blvd., Suite 1400
Los Angeles, CA 90067
Telephone: (424) 214-7000
Facsimile: (424) 214-7010
E-mail: pglassman@stradlinglaw.com
         tingman@stradlinglaw.com

Attorneys for Genautica Oil Holdings, LP

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>TEMBLOR PETROLEUM COMPANY, LLC<br><br>                                        Debtor. | Case No. 2020-11367<br><br>Chapter 7<br><br>DCN Number PRG-1<br><br>**DECLARATION OF DAN SCHOLEFIELD IN SUPPORT OF MOTION OF GENAUTICA OIL HOLDINGS, LP TO VACATE SALE ORDER, AS AMENDED**<br><br>Hearing<br>Date:  March 9, 2023<br>Time:  10:00 a,m.<br>Place:  U.S. Courthouse<br>510 19th Street<br>Bakersfield, CA 93301<br><br>Judge:  Hon. Jennifer Niemann |

I, Dan Scholefield, hereby declare:

1.      I am the authorized representative of Genautica  Oil Holdings, LP ("Genautica"). I

have personal knowledge of the matters set forth in this declaration, and if called upon to testify, I

would and could competently testify thereto. I submit this Declaration in Support of the *Motion Of Genautica Oil Holdings, LP To Vacate Amended Order* (the "Motion").[1]

2.      The Debtor holds a 24.44% working interest (the "Property") in an oil field project (the "Project") referred to as Hangman's Hollow.

3.      Trio is the operator of the Project and its largest working interest holder, holding 43%. The Debtor is the second largest working interest holder, and Genautica is a working interest holder, having purchased its 12.22% interest from both Trio and the Debtor (collectively) in 2013. In 2021, I was told by Stan Eschner, Trio's chairman, that the Project was ready to go and could start injecting steam and producing oil "tomorrow."

4.      Acquisition of the Property would give Trio majority control of the Project.

5.      On June 16, 2022, prompted by the Trustee's notice of intent to abandon the Debtor's interest in another oil field, I wrote to the Trustee stating Genautica's interest in bidding on the Property.

6.      On August 2, 2022, Genautica submitted its $10,000 deposit to the Trustee.

7.      On August 10, 2022, the Court held an auction of the Property.  Trio was present, but did not bid. Prudent was named the winning bidder, and Genautica was named the backup bidder. A true and correct copy of the transcript of the August 10, 2022 auction, as received by Genautica from Veritext Legal Solutions is attached hereto as Exhibit A.

**The Court Should Vacate the Sale Order Because the Bidders
were Induced to Overbid by the Brokers' Misstatements
<u>that the Property was Ready to Produce Oil</u>.**

8.      Genautica and Prudent bid at the August 10th auction based on the representations of the Brokers that the Project was ready to produce oil, representations that we later learned were not correct.

9.      Prior to the sale hearing and auction, the Brokers marketed the Property for sale. In the weeks leading up to the auction, I had telephone calls with Wesley Adams ("Adams"), the

---

[1] Capitalized terms used but not defined herein have the meaning ascribed to such terms in the Motion.

representative of the Brokers handling the sale, regarding the status of the Project and conditions of the sale. During those conversations, it was represented that the Project was ready to produce oil. The Brokers' statements seemed to confirm what Trio told me in 2021.  I was later told by Kris Pitta ("Pitta") of Prudent Resources that he had had similar conversations prior to the auction. The representation that the Project is ready to produce oil is crucial to the value of the Property, and Pitta and I relied on this representation in formulating our bids at the auction. However, this representation was discovered to be incorrect.

10.    The Brokers posted promotional materials on their website. I reviewed these materials and downloaded them to my computer prior to the auction. A true and correct copy of the Brokers' promotional materials downloaded October 8, 2021 is attached hereto as Exhibit B (the "2021 Marketing Materials").

11.    Consistent with the Brokers' statements that the property was ready to produce, the marketing materials were posted on the Brokers' website under the category "Producing Properties."

12.    In describing the Project, the 2021 Marketing Materials state:

> The Hangman Hollow field is currently idled pending final approval of steam injection. Temblor recently received aquifer exemption to enable steam flood injection. The estate highlights 4.0 million barrels of original oil in place and 2.0 mm barrels recoverable."

At the top of the first page, in a section entitled "Recent Updates (5/21/21)" the materials state "Hangman Hollow project just received steam injection permit." The marketing materials imply that the permit that awaited final approval was recently approved as of May 21, 2021. A copy of the 2021 Marketing Materials with the relevant portions highlighted is attached hereto as Exhibit C. The information in the 2021 Marketing Materials further confirmed the Brokers' statement that the Project was ready to produce.

13.    After the Sale Order was entered, however, I came to learn that the representation that Project was ready to produce oil was incorrect. The Project is not producing or ready to produce oil; rather the Project is presently inoperable, the Project is likely one or more years away from being operable, and the Project will require significant further investment before becoming

operable and before required approvals can be obtained. In fact, Genautica has recently been advised by California Geologic Energy Management ("CalGEM") which is one of several regulatory bodies governing oil and gas in California, that comprehensive updates and reviews are required to reestablish Underground Injection Control ("UIC") related permits and to proceed with several essential components of the Project including steam injection, oil and gas well production and storage, and proposed water disposal.

14.     I also learned that the materials prepared by the Brokers were inaccurate and misleading. The representation that the Project was idled "pending final approval of the steam injection permit" is inaccurate. The Project was idled because of an expensive, time-consuming permit updating and approval process involving the critical new water disposal well "WD-2" application.

15.     With regard to the steam injection permit specifically referenced in the 2021 Marketing Materials, while it is true in that in 2019 Trio obtained a steam injection permit, as indicated in an email dated September 13, 2022 from Pitta to the Trustee, in 2021, CalGEM provided written notice to Trio that the Project would need to undergo Project Approval Letter ("PAL") review. Thus, the <u>injection permit was no longer current</u>. In other words, the representation in the marketing materials that the Project was idled pending *final* review of the injection permit was incorrect, the steam injection and/or water disposal permit needed to be brought current. A true and correct copy of an email from the Trustee to me, forwarding an email from Pitta to the Trustee and Brokers, dated September 13, 2022 ("Sept. 13 Email") is attached hereto as Exhibit D.

16.     Further, while the 2019 letter from CalGEM issuing the permit *was* provided to Prudent, the 2021 letter saying the Project would need to undergo PAL review *was not* provided to them until after the auction. Exh. D (Sept. 13 Email).

17.     The representations in the marketing materials regarding the Debtor having received necessary aquifer exempt UIC permits are also incorrect. I only recently learned the Project has been "on hold" by CalGEM since 2018 because the existing water disposal well is insufficient for the Project as planned. In order to secure the approvals and permits required to

proceed, an updated project approval application must be submitted for approval and permitting to various governmental oversight agencies, none of which has happened nor is it certain to happen.

18.      Notably, in September 2022, after the auction, I visited the Brokers' website and noticed that marketing materials had been updated to delete references to these permits and exemptions. I downloaded a copy of those materials to my computer (the "2022 Marketing Materials"). The reference to the Project being idled "pending final approval of steam injection" was deleted; and the reference to "Temblor recently received aquifer exemption to enable steam flood injection" was also deleted. A true and correct copy of the 2022 Marketing Materials is attached hereto as Exhibit E. A copy of the 2022 Marketing Materials with the relevant portions highlighted is attached hereto as Exhibit F.

**The Court Should Vacate the Sale Order Because the Bidders**
**<u>Were Bidding on Different Terms and Conditions</u>.**

19.      During and after the auction, it became apparent that the Brokers were mistaken and confused about whether and to what extent Trio would assert claims against the Debtor's working interest. (Genautica disputes the validity of Trio's claims and rights). As a result, the Trustee and Brokers provided the bidders with materially different terms of the sale, and the bidders bid at auction based on different terms. If for no other reason, the sale should be set aside due to the fact that the only two bidders competing in the auction were given different sets of bid instructions by the Brokers and Trustee; an auction was conducted in which bidders unknowingly were not bidding on the same terms, conditions, and/or assets.

20.      The Brokers represented to me numerous times before and after the auction that Trio's claims would be extinguished or otherwise cut off against the buyer by the sale in the bankruptcy case. Later, I learned that Adams had made the same representations to Pitta, and as a result, at the auction Prudent was bidding for the Property believing the Property would be transferred free and clear of Trio's purported interests.

21.    On August 17, 2022, after the auction, I received a phone call from Adams in which he said that Pitta was upset that Prudent was being asked to pay the Debtor's prior outstanding liabilities.  During the call, I stated that the bankruptcy papers said that liabilities were included in the terms of sale, but the Brokers disagreed. Accordingly, I sent Adams the Sale Motion, Declaration and Exhibit [Dkts, 416, 418, and 419] which had been sent to me by the Trustee. A true and correct copy of my August 17, 2022 email exchange with Adams (without attachments) is attached hereto as Exhibit G. In response, Adams sent me the Notice of Hearing, Dkt. 417, which had been sent to him  by the Trustee, and he told me he had not seen the other documents.

22.    Adams told me that he relied on the Notice of Hearing which omitted any reference to the sale being subject to any other claims or interests, and that, as a result, he believed that the sale would extinguish Trio's claim against the Debtor's working interest which would stay with the estate.  Adams told me that he provided the Notice of Hearing to Prudent, namely Dkt. 417.

23.    At the auction, relying on the misstatements to Prudent both as to the condition of the property and as to Prudent's potential for liability to Trio, Prudent was enticed to bid up the Property to $101,000, 10 times Trio's stalking horse bid.

24.    After the auction, Prudent learned that not only was the information about the permitting and status of the Project incorrect, but also that Trio would claim that Prudent would potentially be charged with the Debtor's pre-petition liabilities, despite the representations the bidders received to the contrary. Ultimately, Prudent pulled out of the sale. Based on my conversations with Pitta, I believe that had Prudent known of the true facts, it likely would not have participated in the auction, and Genautica's opening bid at $15,000 would have been the highest bid.

**The Court Should Vacate the Sale Order**
**And Reopen the Auction.**

25.    Genautica is still interested in acquiring the Property, even though the true facts revealed that the Property was worth substantially less than previously thought. Genautica offered to revise its bid to its opening bid amount ($15,000) and immediately close the transaction.

Genautica remains willing to purchase the Property for $15,000 or to participate in a new auction for the purchase of the Property.

26. The Trustee's Motion to Amend was served on me, by email, at 3:54 p.m. The following day, I wrote to the Trustee objecting to the relief sought in the Motion to Amend and reiterating Genautica's willingness to purchase the Property for $15,000.

27. Awarding the Property to Trio, for the lowest bid, rather than reopening the auction to fair and transparent competitive bidding, that will guaranty the estate a 50% higher price for the Debtor's property, is not in the interests of justice.

28. The 2021 Marketing Materials contain information, including graphs and charts, that is not readily accessible to any entity other than Trio, as Operator of the Project. The information in the marketing materials must have come from Trio as operator of the Project. Such information is unlikely to have come from any other source.

29. Trio, as Operator, is the entity that failed to obtain the necessary permits to let the Project proceed. Trio never informed Genautica, nor was Genautica informed by the Brokers or Trustee, that CalGEM put the water disposal well application on hold together with the entire PAL, or of any of the other challenges facing the Project, all of which was concealed by Trio.

30. Additionally, I was recently informed that Trio instructed CalGEM to put the Project on the backburner and reassign its project review engineer to Trio's unrelated South Salinas prospect.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 1, 2023 in __Agoura Hills__ , __CA__ .

By: _Dan Scholefield_____
DAN SCHOLEFIELD

# PROOF OF SERVICE

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
10100 Santa Monica Blvd, Suite 1400, Los Angeles, CA 90067

A true and correct copy of the foregoing document DECLARATION OF DAN SCHOLEFIELD IN SUPPORT OF MOTION OF GENAUTICA OIL HOLDINGS, LP TO VACATE SALE ORDER, AS AMENDED will be served or was served (a) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On February 2, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Leonard K. Welsh on behalf of Debtor  TEMBLOR PETROLEUM COMPANY, LLC
lwelsh@lkwelshlaw.com; nmarin@lkwelshlaw.com

D. Max Gardner on behalf of Trustee Jeffrey M. Vetter
jeffreyvetter@hotmail.com; CA97@ecfcbis.com

D. Max Gardner on behalf of Trustee Jeffrey M. Vetter
dmgardner@dmaxlaw.com

Office of the U.S. Trustee
ustpregion17.fr.ecf@usdoj.gov

D. Keith B. Dunnagan on behalf of Creditor  California Energy Exchange Corporation
kbdunnagan@bpelaw.com; sarahm@bpelaw.com

Leena M. Sheet on behalf of Creditor  California State Lands Commission
Leena.Sheet@doj.ca.gov

Donald C. Oldaker on behalf of Creditor  Eagle Petroleum Monterey, LLC
doldaker@clifford-brownlaw.com; kmharleston@clifford-brownlaw.com

Hyun Suk Choi on behalf of Creditor  Eagle Petroleum Monterey, LLC
hchoi@choiandpark.com; lkleist@choiandpark.com

Donald C. Oldaker on behalf of Creditor  Eagle Petroleum, LLC
doldaker@clifford-brownlaw.com; kmharleston@clifford-brownlaw.com

Hyun Suk Choi on behalf of Creditor  Eagle Petroleum, LLC
hchoi@choiandpark.com; lkleist@choiandpark.com

Hyun Suk Choi on behalf of Creditor  Hanwha Resources (USA) Corporation
hchoi@choiandpark.com; lkleist@choiandpark.com

Chris D. Kuhner on behalf of Creditor  Inproinvest, LLC
c.kuhner@kornfieldlaw.com

John J. Harris on behalf of Creditor  Kings County Development Limited
jharris@cassosparks.com; ldominguez@cassosparks.com

Thomas R. Phinney on behalf of Creditor  Paul Graham Drilling
tom@parkinsonphinney.com; allison@parkinsonphinney.com

Michael N. Mills on behalf of Creditor  Petro-Lud, Inc.
michael.mills@stoel.com; tammy.ross@stoel.com

Ashley Teesdale on behalf of Creditor  Primoris Build Own and Operate LLC
ashley@ringstadlaw.com

Paul R. Glassman on behalf of Interested Party  Genautica Oil Holdings, LP
pglassman@stradlinglaw.com; cpesis@stradlinglaw.com

Justin C. Valencia on behalf of U.S. Trustee Tracy Hope Davis
justin.c.valencia@usdoj.gov

☐ Service information continued on attached page

**2.  <u>SERVED BY UNITED STATES MAIL</u>:**  On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows:

☐ Service information continued on attached page

**3.  <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows:

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 2, 2023 | Christine Pesis | */s/ Christine Pesis* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

# EXHIBIT D

Doc # 502 – Exhibits to Declaration of Dan Scholefield in Support of  Motion to Vacate

1

2  STRADLING YOCCA CARLSON & RAUTH, P.C.
   Paul R. Glassman (State Bar No. 76536)

3  Tatiana Ingman (State Bar No. 314284)
   10100 Santa Monica Blvd., Suite 1400

4  Los Angeles, CA 90067
   Telephone: (424) 214-7000

5  Facsimile: (424) 214-7010
   E-mail: pglassman@stradlinglaw.com

6           tingman@stradlinglaw.com

7  Attorneys for Genautica Oil Holdings, LP

8

9

10                **UNITED STATES BANKRUPTCY COURT**

11              **EASTERN DISTRICT OF CALIFORNIA**

12

13 | In re | Case No. 2020-11367 |

14 | TEMBLOR PETROLEUM COMPANY, LLC | Chapter 7 |
   |                  Debtor. | DCN Number PRG-1 |

15

16                                      **EXHIBITS TO DECLARATION OF**

17                                      **DAN SCHOLEFIELD IN SUPPORT OF**
                                        **MOTION OF GENAUTICA OIL**

18                                      **HOLDINGS, LP TO VACATE SALE**
                                        **ORDER, AS AMENDED**

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

1    UNITED STATES BANKRUPTCY COURT

2    EASTERN DISTRICT OF CALIFORNIA

3    Case No. 20-11367

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7        TEMBLOR PETROLEUM COMPANY, LLC,

8

9            Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11                    United States Bankruptcy Court

12                    2500 Tulare Street, Suite 2501

13                    Fresno, California 93721

14

15                    October 8, 2022

16

17

18

19

20

21   B E F O R E :

22   HON JENNIFER E. NIEMANN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:   UNKNOWN

1    HEARING re Auction

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Benjamin Graham, CET #1394

```
 1    A P P E A R A N C E S :

 2

 3    D. MAX GARDNER, ATTORNEY-AT-LAW

 4         Attorney for Chapter 7 Trustee, Jeffrey M. Vetter

 5         930 Truxtun Avenue, Suite 203

 6         Bakersfield, CA 93301

 7

 8    BY:  D. MAX GARDNER, ESQ.

 9

10    CASSO & SPARKS, LLP

11         Attorney for Creditor, Kings County Development Limited

12         13300 Crossroads Parkway North, Suite 410

13         City of Industry, CA 91746

14

15    BY:  JOHN J. HARRIS, ESQ.

16

17    ALSO PRESENT:

18

19    KRIS PITTA, Prudent Resources

20    DANIEL B. SCHOLEFIELD, Genautica Oil Holdings LP

21    STEVEN ROWLEE, Trio Petroleum

22

23

24

25
```

Page 4

1                    P R O C E E D I N G S

2              THE COURT:  Next matter, please.

3              CLERK:  Matter Number 5, for Temblor Petroleum

4    Company, LLC.

5              THE COURT:  May I have appearance of counsel for

6    the trustee?

7              MR. GARDNER:  Good afternoon, Your Honor.  Max

8    Gardner.  Appearing also in my office is Jeffrey M. Vetter,

9    Chapter 7 trustee.

10             THE COURT:  Okay, and counsel for Kings County

11   Development Limited?

12             MR. HARRIS:  Good afternoon, Your Honor.  John

13   Harris, on behalf of creditor, Kings County Development

14   Limited.

15             THE COURT:  And interested -- the appearance --

16   please state your first and last name of interested party,

17   Kris Pitta.

18             MR. PITTA:  Yes.  This is Kris Pitta from Prudent

19   Resources LLP.

20             THE COURT:  I'm sorry.  Can you just repeat that

21   one more time?

22             MR. PITTA:  Kris Pitta, from Prudent Resources

23   LLC.

24             THE COURT:  Are you a bidder, Mr. Pitta?  Is

25   Prudent Resources a bidder?

1           MR. PITTA:  Yes, ma'am.  Yes, ma'am.

2           THE COURT:  Okay, and Mr. Scholefield?

3           MR. SCHOLEFIELD:  Yes.  This is Dan Scholefield.

4    I'm a bidder with Genautica Oil Holdings LP.

5           THE COURT:  Can you please spell that?

6           MR. SCHOLEFIELD:  G-E-N-A-U-T-I-C-A, Oil Holdings

7    LP.

8           THE COURT:  Okay, and is there any other

9    appearances in this matter?

10          Okay.  Mr. Gardner?

11          MR. GARDNER:  Yes, Your Honor.  Thank you for the

12   tentative.  I've reviewed it.  In light of the two bidders

13   that are present, we would request that the Court conduct an

14   auction in the procedure or the protocol that was filed.  We

15   indicated there would be $1,000 increments.  The trustee

16   would accept the highest bid as being the higher and better

17   bid, and if that auction concludes successfully today, we'd

18   ask that the Court award or authorize the sale to that

19   higher or highest bid with a backup provision if we were

20   unable to complete the transaction within 30 days from the

21   entry of the order approving the sale that we would accept

22   the follow-up bid.

23          THE COURT:  Is there anybody appearing on behalf

24   of Trio Petroleum?  Okay.  We do.  Do you want to come

25   forward, please, sir, and please state your name for the

1    record.

2           MR. ROWLEE:  My name is Steven Rowlee.

3           THE COURT:  And can you please spell your first

4    and last name, please?

5           MR. ROWLEE:  Steven, S-T-E-V-E-N, last name

6    Rowlee, R-O-W-L-E-E, representing Trio Petroleum.

7           THE COURT:  Okay.  All right.  Mr. Harris, did you

8    have anything you wanted to say before the Court starts the

9    bidding?

10          MR. HARRIS:  No, Your Honor.  I just had a

11    procedural point to bring up afterwards.  Thank you.

12          THE COURT:  After the bidding's complete?

13          MR. HARRIS:  No, with --

14          THE COURT:  Can you -- what is the procedural

15    issue?

16          MR. HARRIS:  Your Honor, at the hearing on June

17    29, on the trustee's motion of intent to abandon, counsel

18    for the trustee indicated that a motion seeking authority

19    for the trustee to sign a quitclaim to Kings County

20    Development Limited would be filed and would be heard at the

21    same time as this motion.  Nothing has happened, and so my

22    procedural point was simply to come back to that point and

23    see if we could get a hearing date.

24          THE COURT:  Okay.

25          MR. HARRIS:  Thank you.

1        THE COURT:  Very well.  We'll --

2        MR. HARRIS:  But no points with respect to this

3  sale.

4        THE COURT:  Okay.  Very well.  Okay.  Mr. Gardner,

5  how do we --

6        MR. GARDNER:  Yeah.  I think --

7        THE COURT:  -- how should we proceed with respect

8  to the sale?

9        MR. GARDNER:  As I indicated, Your Honor, we have

10  three bidders present.  The protocol provides for $1,000

11  increments.  As far as the Court conducting it, we would

12  request that the Court entertain bids from each of the three

13  parties and, as I indicated, we would accept the highest bid

14  as the highest and best bid, and then assuming the Court

15  grants that sale for that amount, then we would ask as a

16  backup that the second highest bid be able to conclude if we

17  weren't able to finish the first sale within 30 days of the

18  Court entering an order.

19        THE COURT:  Okay.  Well, Mr. -- well, I don't

20  think Trio Petroleum needs to be bidding against itself.  So

21  Mr. Gardner, do you have a preference as to whether Prudent

22  Resources LLC or Genautica Oil Holdings LP submits the first

23  overbid?

24        MR. GARDNER:  We do not have a preference as to

25  the order of bidding.

1          THE COURT:  Okay.  Mr. Pitta, on behalf of Prudent
2     Resources?
3          MR. PITTA:  Yes.  I would like to go with -- start
4     with $11,000.
5          THE COURT:  Do you have an overbid above $10,000
6     with a minimum overbid of at least $1,000?
7          MR. PITTA:  I think we can only go by $1,000, Your
8     Honor, right?  That's why I'm starting at $11,000.
9          THE COURT:  I'm sorry.  Do you have a -- are you
10    bidding $11,000?
11         MR. PITTA:  Yes, ma'am.
12         THE COURT:  Mr. Scholefield, on behalf of
13    Genautica Oil Holdings?
14         MR. SCHOLEFIELD:  Yes, Your Honor.  We will bid
15    $15,000.
16         THE COURT:  Okay.  Mr. Rowlee, on behalf of Trio
17    Petroleum or, Mr. Pitta, on behalf of Prudent Resources?
18    You need to say into the -- you need to speak into the
19    microphone.
20         MR. ROWLEE:  No bid from Trio.
21         THE COURT:  Okay.  Okay.  Mr. Pitta, there's a
22    $15,000 bid from Genautica Oil Holdings.  Do you wish to
23    increase your bid on behalf of Prudent Resources?
24         MR. PITTA:  Yes, Your Honor.  We would like to bid
25    $16,000.

1            THE COURT:  $16,000?

2            MR. PITTA:  Yes.  Yes, Your Honor.

3            THE COURT:  Okay.  Mr. Scholefield?

4            MR. SCHOLEFIELD:  Yes, Your Honor.  We will

5    increase our bid to $20,000.

6            THE COURT:  Okay.  Mr. Pitta?

7            MR. PITTA:  Yes, Your Honor.  We would like to go

8    with $25,000.

9            THE COURT:  $25,000?

10           MR. PITTA:  Yes, Your Honor.

11           THE COURT:  Okay.  Mr. Scholefield?

12           MR. SCHOLEFIELD:  Yes, Your Honor.  We will go to

13   $26,000.

14           THE COURT:  Okay.  Mr. Pitta?

15           MR. PITTA:  Yes, Your Honor.  We would like to go

16   with $31,000.

17           THE COURT:  I'm sorry.  Can you repeat that?

18           MR. PITTA:  We would like to go with $31,000.

19           THE COURT:  $31,000?

20           MR. PITTA:  Yes.

21           THE COURT:  Okay.  Mr. Scholefield?

22           MR. SCHOLEFIELD:  $32,000.

23           THE COURT:  Okay.  Mr. Pitta?

24           MR. PITTA:  Yes, Your Honor.  We would like to go

25   with $41,000.

1          THE COURT:  Okay.  Mr. Scholefield?

2          MR. SCHOLEFIELD:  Could you repeat that?  I'm

3  sorry, Your Honor.  I couldn't hear.

4          THE COURT:  $41,000.

5          MR. PITTA:  $41,000.

6          THE COURT:  Mr. Pitta, that was $41,000?

7          MR. PITTA:  Yeah.  That is correct, Your Honor.

8          THE COURT:  Okay.

9          MR. SCHOLEFIELD:  Forty-two.  $42,000.

10         THE COURT:  Okay.  Mr. Pitta?

11         MR. PITTA:  We would like to go with $46,000, Your

12  Honor.

13         THE COURT:  Okay.  Mr. Scholefield?

14         MR. SCHOLEFIELD:  Yes.  We will go with $50,000.

15         THE COURT:  Okay.  Mr. Pitta?

16         MR. PITTA:  Yes, Your Honor.  We would like to go

17  with $61,000.

18         THE COURT:  Okay.  Mr. Scholefield?

19         MR. SCHOLEFIELD:  Your Honor, we would like to --

20  we've reached a point, a price point above which we would be

21  willing to bid higher; however, we were not given adequate

22  information about the outstanding liabilities that we're

23  being asked to assume and we'd like to have the balance of

24  that information provided in order to place a higher bid.

25  So we request that that information be provided to us and

1    that the bidding be continued at a later time and in order

2    for us to place a higher bid, but have an understanding of

3    what the outstanding liabilities are.

4            THE COURT:  Mr. Gardner?

5            MR. GARDNER:  Just one moment, Your Honor.  Your

6    Honor, I've conferred with Mr. Vetter.  He is requesting

7    that we proceed with the auction in its current -- the way

8    that it's currently postured and noticed interested parties.

9            THE COURT:  Okay.  So Mr. Scholefield, the trustee

10   wants to finalize the bidding today and not continue this,

11   this bidding, for a further time.

12           MR. SCHOLEFIELD:  Okay.  So we would be willing to

13   increase our bid in this event.  The current bid is what?

14           THE COURT:  $61,000.

15           MR. SCHOLEFIELD:  We will bid $62,000.

16           THE COURT:  Okay.

17           MR. PITTA:  Yes, Your Honor.  This is Prudent

18   Resources.  We would like to go with $66,000.

19           THE COURT:  Okay.  Mr. Scholefield?

20           MR. SCHOLEFIELD:  Yes.  We will go to $70,000.

21           THE COURT:  Okay.  Mr. Pitta?

22           MR. PITTA:  Yes, Your Honor.  We'd like to go with

23   $75,000.

24           THE COURT:  Okay.  Mr. Scholefield?

25           MR. SCHOLEFIELD:  $80,000.

```
 1              THE COURT:  Okay.  Mr. Pitta?

 2              MR. PITTA:  $85,000.

 3              THE COURT:  Do you want to repeat that, please?

 4              MR. PITTA:  $85,000, Your Honor.

 5              THE COURT:  $85,000.  Okay.  Mr. Scholefield?

 6              MR. SCHOLEFIELD:  $86,000.

 7              THE COURT:  Okay.  Mr. Pitta?

 8              MR. PITTA:  Yes, Your Honor.  One second.

 9              THE COURT:  Okay.

10              MR. PITTA:  Yes, Your Honor.  We would like to bid

11      $101,000.

12              THE COURT:  $101,000.  Okay.  Mr. Scholefield?

13              MR. SCHOLEFIELD:  We are dropping out of the

14      bidding, Your Honor.

15              THE COURT:  Okay.  Mr. Gardner?

16              MR. GARDNER:  Your Honor, thank you for conducting

17      the auction.  The trustee would then recommend that the

18      order authorizing the sale to Prudent Resources be entered.

19      We would prepare the form of the order for Mr. Pitta or his

20      designee to sign off.  The amount would be $101,000.  We

21      would then as an alternate, an alternate sale, that it

22      provides for a sale to Genautica Oil to be signed off by Mr.

23      Scholefield or his designee in the amount of $86,000.

24              THE COURT:  Okay.  Mr. Pitta, do you have any

25      questions regarding what Mr. Gardner just said?
```

Page 13

1                    MR. PITTA:  No, Your Honor.  We concur.

2                    THE COURT:  Okay, and Mr. Scholefield, does

3        Genautica Oil Holdings LP agree to be a backup bidder --

4        have a backup bid of $86,000?

5                    MR. SCHOLEFIELD:  Yes, we do.

6                    THE COURT:  Okay.  Then, Mr. Gardner, if there

7        isn't anything else, will you please prepare a form of order

8        and have representatives for Prudent Resources and Genautica

9        Oil Holdings sign off on the form of order?

10                    MR. GARDNER:  I will, Your Honor.  Thank you.

11                    THE COURT:  Thank you.  Is there anything else

12       with respect to this matter?  Very well.  Thank you.  That

13       ends this --

14

15                    (Whereupon these proceedings were concluded

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3         I, Benjamin Graham, certified that the foregoing

4     transcript is a true and accurate record of the proceedings.

5

6

7

8     Benjamin Graham, CET-1394

9

10

11

12

13

14

15

16

17

18

19

20     Veritext Legal Solutions

21     330 Old Country Road

22     Suite 300

23     Mineola, NY 11501

24

25     Date:  December 27, 2022

**&**

**&**   3:10

**1**

**1,000**   5:15 7:10
   8:6,7
**10,000**   8:5
**101,000**   12:11
   12:12,20
**11,000**   8:4,8,10
**11501**   14:23
**12151**   14:6
**13300**   3:12
**1394**   2:25 14:8
**15,000**   8:15,22
**16,000**   8:25 9:1

**2**

**20,000**   9:5
**20-11367**   1:3
**2022**   1:15 14:25
**203**   3:5
**25,000**   9:8,9
**2500**   1:12
**2501**   1:12
**26,000**   9:13
**27**   14:25
**29**   6:17

**3**

**30**   5:20 7:17
**300**   14:22
**31,000**   9:16,18
   9:19
**32,000**   9:22
**330**   14:21

**4**

**41,000**   9:25 10:4
   10:5,6
**410**   3:12

**42,000**   10:9
**46,000**   10:11

**5**

**5**   4:3
**50,000**   10:14

**6**

**61,000**   10:17
   11:14
**62,000**   11:15
**66,000**   11:18

**7**

**7**   3:4 4:9
**70,000**   11:20
**75,000**   11:23

**8**

**8**   1:15
**80,000**   11:25
**85,000**   12:2,4,5
**86,000**   12:6,23
   13:4

**9**

**91746**   3:13
**930**   3:5
**93301**   3:6
**93721**   1:13

**a**

**abandon**   6:17
**able**   7:16,17
**accept**   5:16,21
   7:13
**accurate**   14:4
**adequate**   10:21
**afternoon**   4:7,12
**agree**   13:3
**alternate**   12:21
   12:21

**amount**   7:15
   12:20,23
**anybody**   5:23
**appearance**   4:5
   4:15
**appearances**   5:9
**appearing**   4:8
   5:23
**approving**   5:21
**asked**   10:23
**assume**   10:23
**assuming**   7:14
**attorney**   3:3,4
   3:11
**auction**   2:1 5:14
   5:17 11:7 12:17
**authority**   6:18
**authorize**   5:18
**authorizing**  
   12:18
**avenue**   3:5
**award**   5:18

**b**

**b**   1:21 3:20
**back**   6:22
**backup**   5:19
   7:16 13:3,4
**bakersfield**   3:6
**balance**   10:23
**bankruptcy**   1:1
   1:11,23
**behalf**   4:13 5:23
   8:1,12,16,17,23
**benjamin**   2:25
   14:3,8
**best**   7:14
**better**   5:16
**bid**   5:16,17,19
   5:22 7:13,14,16
   8:14,20,22,23

   8:24 9:5 10:21
   10:24 11:2,13
   11:13,15 12:10
   13:4
**bidder**   4:24,25
   5:4 13:3
**bidders**   5:12
   7:10
**bidding**   6:9 7:20
   7:25 8:10 11:1
   11:10,11 12:14
**bidding's**   6:12
**bids**   7:12
**bring**   6:11

**c**

**c**   3:1 4:1 5:6
   14:1,1
**ca**   3:6,13
**california**   1:2,13
**case**   1:3
**casso**   3:10
**certified**   14:3
**cet**   2:25 14:8
**chapter**   3:4 4:9
**city**   3:13
**clerk**   4:3
**come**   5:24 6:22
**company**   1:7 4:4
**complete**   5:20
   6:12
**conclude**   7:16
**concluded**   13:15
**concludes**   5:17
**concur**   13:1
**conduct**   5:13
**conducting**   7:11
   12:16
**conferred**   11:6
**continue**   11:10

**continued** 11:1
**correct** 10:7
**counsel** 4:5,10
  6:17
**country** 14:21
**county** 3:11 4:10
  4:13 6:19
**court** 1:1,11 4:2
  4:5,10,15,20,24
  5:2,5,8,13,18,23
  6:3,7,8,12,14,24
  7:1,4,7,11,12,14
  7:18,19 8:1,5,9
  8:12,16,21 9:1,3
  9:6,9,11,14,17
  9:19,21,23 10:1
  10:4,6,8,10,13
  10:15,18 11:4,9
  11:14,16,19,21
  11:24 12:1,3,5,7
  12:9,12,15,24
  13:2,6,11
**creditor** 3:11
  4:13
**crossroads** 3:12
**current** 11:7,13
**currently** 11:8

**d**

**d** 3:3,8 4:1
**dan** 5:3
**daniel** 3:20
**date** 6:23 14:25
**days** 5:20 7:17
**debtor** 1:9
**december** 14:25
**designee** 12:20
  12:23
**development**
  3:11 4:11,13
  6:20

**district** 1:2
**don't** 7:19
**dropping** 12:13

**e**

**e** 1:21,21,22 3:1
  3:1 4:1,1 5:6 6:5
  6:5,6,6 14:1
**eastern** 1:2
**ecro** 1:25
**ends** 13:13
**entered** 12:18
**entering** 7:18
**entertain** 7:12
**entry** 5:21
**esq** 3:8,15
**event** 11:13

**f**

**f** 1:21 14:1
**far** 7:11
**filed** 5:14 6:20
**finalize** 11:10
**finish** 7:17
**first** 4:16 6:3
  7:17,22
**follow** 5:22
**foregoing** 14:3
**form** 12:19 13:7
  13:9
**forty** 10:9
**forward** 5:25
**fresno** 1:13
**further** 11:11

**g**

**g** 4:1 5:6
**gardner** 3:3,8
  4:7,8 5:10,11
  7:4,6,9,21,24
  11:4,5 12:15,16
  12:25 13:6,10

**genautica** 3:20
  5:4 7:22 8:13,22
  12:22 13:3,8
**given** 10:21
**go** 8:3,7 9:7,12
  9:15,18,24
  10:11,14,16
  11:18,20,22
**good** 4:7,12
**graham** 2:25
  14:3,8
**grants** 7:15

**h**

**happened** 6:21
**harris** 3:15 4:12
  4:13 6:7,10,13
  6:16,25 7:2
**hear** 10:3
**heard** 6:20
**hearing** 2:1 6:16
  6:23
**higher** 5:16,19
  10:21,24 11:2
**highest** 5:16,19
  7:13,14,16
**holdings** 3:20
  5:4,6 7:22 8:13
  8:22 13:3,9
**hon** 1:22
**honor** 4:7,12
  5:11 6:10,16 7:9
  8:8,14,24 9:2,4
  9:7,10,12,15,24
  10:3,7,12,16,19
  11:5,6,17,22
  12:4,8,10,14,16
  13:1,10

**i**

**increase** 8:23
  9:5 11:13
**increments** 5:15
  7:11
**indicated** 5:15
  6:18 7:9,13
**industry** 3:13
**information**
  10:22,24,25
**intent** 6:17
**interested** 4:15
  4:16 11:8
**issue** 6:15
**i'm** 8:9 9:17

**j**

**j** 3:15
**jeffrey** 3:4 4:8
**jennifer** 1:22
**john** 3:15 4:12
**judge** 1:23
**june** 6:16

**k**

**kings** 3:11 4:10
  4:13 6:19
**kris** 3:19 4:17,18
  4:22

**l**

**l** 6:6
**law** 3:3
**legal** 14:20
**liabilities** 10:22
  11:3
**light** 5:12
**limited** 3:11
  4:11,14 6:20
**llc** 1:7 4:4,23
  7:22

**llp**   3:10 4:19
**lp**   3:20 5:4,7
  7:22 13:3

**m**

**m**   3:4 4:8
**ma'am**   5:1,1
  8:11
**matter**   1:5 4:2,3
  5:9 13:12
**max**   3:3,8 4:7
**microphone**
  8:19
**mineola**   14:23
**minimum**   8:6
**moment**   11:5
**motion**   6:17,18
  6:21

**n**

**n**   3:1 4:1 5:6 6:5
  14:1
**name**   4:16 5:25
  6:2,4,5
**need**   8:18,18
**needs**   7:20
**niemann**   1:22
**north**   3:12
**noticed**   11:8
**number**   4:3
**ny**   14:23

**o**

**o**   1:21 4:1 6:6
  14:1
**october**   1:15
**office**   4:8
**oil**   3:20 5:4,6
  7:22 8:13,22
  12:22 13:3,9
**okay**   4:10 5:2,8
  5:10,24 6:7,24

  7:4,4,19 8:1,16
  8:21,21 9:3,6,11
  9:14,21,23 10:1
  10:8,10,13,15
  10:18 11:9,12
  11:16,19,21,24
  12:1,5,7,9,12,15
  12:24 13:2,6
**old**   14:21
**order**   5:21 7:18
  7:25 10:24 11:1
  12:18,19 13:7,9
**outstanding**
  10:22 11:3
**overbid**   7:23 8:5
  8:6

**p**

**p**   3:1,1 4:1
**parkway**   3:12
**parties**   7:13
  11:8
**party**   4:16
**petroleum**   1:7
  3:21 4:3 5:24
  6:6 7:20 8:17
**pitta**   3:19 4:17
  4:18,18,22,22
  4:24 5:1 8:1,3,7
  8:11,17,21,24
  9:2,6,7,10,14,15
  9:18,20,23,24
  10:5,6,7,10,11
  10:15,16 11:17
  11:21,22 12:1,2
  12:4,7,8,10,19
  12:24 13:1
**place**   10:24 11:2
**please**   4:2,16 5:5
  5:25,25 6:3,4
  12:3 13:7

**point**   6:11,22,22
  10:20,20
**points**   7:2
**postured**   11:8
**preference**   7:21
  7:24
**prepare**   12:19
  13:7
**present**   3:17
  5:13 7:10
**price**   10:20
**procedural**   6:11
  6:14,22
**procedure**   5:14
**proceed**   7:7 11:7
**proceedings**
  13:15 14:4
**protocol**   5:14
  7:10
**provided**   10:24
  10:25
**provides**   7:10
  12:22
**provision**   5:19
**prudent**   3:19
  4:18,22,25 7:21
  8:1,17,23 11:17
  12:18 13:8

**q**

**questions**   12:25
**quitclaim**   6:19

**r**

**r**   1:21 3:1 4:1
  6:6 14:1
**reached**   10:20
**recommend**
  12:17
**record**   6:1 14:4

**regarding**   12:25
**repeat**   4:20 9:17
  10:2 12:3
**representatives**
  13:8
**representing**   6:6
**request**   5:13
  7:12 10:25
**requesting**   11:6
**resources**   3:19
  4:19,22,25 7:22
  8:2,17,23 11:18
  12:18 13:8
**respect**   7:2,7
  13:12
**reviewed**   5:12
**right**   6:7 8:8
**road**   14:21
**rowlee**   3:21 6:2
  6:2,5,6 8:16,20

**s**

**s**   3:1 4:1 6:5
**sale**   5:18,21 7:3
  7:8,15,17 12:18
  12:21,22
**scholefield**   3:20
  5:2,3,3,6 8:12
  8:14 9:3,4,11,12
  9:21,22 10:1,2,9
  10:13,14,18,19
  11:9,12,15,19
  11:20,24,25
  12:5,6,12,13,23
  13:2,5
**second**   7:16 12:8
**see**   6:23
**seeking**   6:18
**sign**   6:19 12:20
  13:9

signature  14:6
signed  12:22
simply  6:22
sir  5:25
solutions  14:20
sorry  4:20 8:9
　　9:17 10:3
sparks  3:10
speak  8:18
spell  5:5 6:3
start  8:3
starting  8:8
starts  6:8
state  4:16 5:25
states  1:1,11
steven  3:21 6:2,5
street  1:12
submits  7:22
successfully
　　5:17
suite  1:12 3:5,12
　　14:22

**t**

t  5:6 6:5 14:1,1
temblor  1:7 4:3
tentative  5:12
thank  5:11 6:11
　　6:25 12:16
　　13:10,11,12
think  7:6,20 8:7
three  7:10,12
time  4:21 6:21
　　11:1,11
today  5:17 11:10
transaction  5:20
transcribed  2:25
transcript  14:4
trio  3:21 5:24
　　6:6 7:20 8:16,20

true  14:4
trustee  3:4 4:6,9
　　5:15 6:18,19
　　11:9 12:17
trustee's  6:17
truxtun  3:5
tulare  1:12
two  5:12 10:9

**u**

u  5:6
u.s.  1:23
unable  5:20
understanding
　　11:2
united  1:1,11
unknown  1:25

**v**

v  6:5
veritext  14:20
vetter  3:4 4:8
　　11:6

**w**

w  6:6
want  5:24 12:3
wanted  6:8
wants  11:10
way  11:7
we've  10:20
willing  10:21
　　11:12
wish  8:22

**x**

x  1:4,10

**y**

yeah  7:6 10:7

# EXHIBIT B

 

‹ **Energy Advisors** Group
Formerly PLS Divestment Services

Login ☰

 **COURT ORDERED SALE** ☆

Producing Properties
All Standard Disclaimers Apply & Seller Rights Retained

🖨

| Deal Overview | Data Room |
|---|---|



**CALIFORNIA PORTFOLIO FOR SALE**

3-Properties; 2-Prospects; 2-Discoveries

FRESNO & MONTEREY

FIVE POINTS & LYNCH CANYON FIELDS

HANGMAN HOLLOW, LANDER AVENUE,

& LOS ALAMOS PROSPECTS

2-DISCOVERIES READY TO EXPLOIT

3-D Seismic Defined. 14-Sq. Miles

15-100% OPERATED & NonOperated WI

Recently Restarted Lynch Field

Prospects Ready to Drill

Fully Automated Facilities

OOIP & OGIP: 70 MMBO & 115-265 BCF

Light Oil: 44 API. High BTU Gas

**CHAPTER 7 BANKRUPTCY**

**PP 8837DV**

| Login For More Access | Contact Us |
|---|---|

**Chapter 7 Bankruptcy Sale Process**

**Energy Advisors Group** is helping **Temblor Holdings** market their West Coast-operated & non-operated assets in Fresno & Monterey Cos., CA as part of a Judge Ordered Sale, authorized and approved by the United States Bankruptcy Court for the Eastern District of California.

The assets, a mixture of properties and prospects include enough "critical mass" that might act as a "company starter" for the right buyer or "booster asset" for another operator seeking to expand in California. In light of finding one buyer for all the assets, the Court may consider breaking up the package accordingly.

Recent Updates (5/21/21):

-Process just changed from a Chapter 11 to a Chapter 7

-The Lynch Canyon project is under new management (New Investors Bought Eagle)

-Lynch Canyon was recently restarted without steam support (Making ~150 BOPD Gross, ~20 BOPD Net)

-Hangman Hollow project just received steam injection permit.

**CALIFORNIA PROSPECTS & DEVELOPMENT OPPORTUNITIES**

5-Property Groups; 3-Properties; 2-Prospects; 2-Discoveries.

COURT ORDERED BANKRUPTCY SALE PROCESS

FRESNO & MONTEREY CO.,

FIVE POINTS, LYNCH CANYON, HANGMAN HOLLOW, LANDER AVENUE & LOS ALAMOS

Select Prospects & Projects Ready To Drill.

Certain Fields Are Fully Automated Facilities

3-D Seismic Defined Projects. 14-Sq. Miles Seismic Available

15-100% OPERATED & NonOperated WI For Sale.

OOIP & OGIP: 70 MMBO & 115-265 BCF

Premium Prices Achieved. Light Oil: 44 API. High BTU Gas

**5--ASSET GROUPS FOR SALE.**

Here are more details by individual property and prospect:

 

**FIVE POINTS FIELD---**

New discovery. Light oil. (44 API) production with associated high BTU gas

Seller targeting: 3 MMBO OOIP and 15 MCF OGIP

Temblor owns a 48.55% working interest with a 37.88% NRI and the project is currently shut-in.

This individual project has been fully drilled and is new purchaser needs to secure a gas reinjection permit.

The log of Witter Field shows a uniform 100-foot pay zone.



**LYNCH CANYON PROPERTY---**

Producing heavy oil field with 14.91% working Interest for sale and 12.43% NRI.

Produced 150 BOPD without steam injection in Dec '20.

Just received AFE to restart steam injection.

23 MMBO OOIP and 7.0-10 MM barrels recoverable

**HANGMAN HOLLOW FIELD---**

New discovery. One mile from Lynch Canyon.

24.44% Working Interest, 20.37% NRI

The Hangman Hollow field is currently idled pending final approval of steam injection

Temblor recently received aquifer exemption to enable steam flood injection

The estate highlights 4.0 million barrels of original oil in place and 2.0 mm barrels recoverable;

<u>There are 2 Prospects Ready To Drill and Develop</u>

**LANDER AVENUE GAS PROSPECT---**



‹ Energy **Advisors** Group
Formerly PLS Divestment Services

Login ☰

**LOS ALAMOS PROSPECT---**

Monterey Shale Prospect w/ 700 Ft;

100% ownership position through Temblor affiliates;

Light oil column at 10,000 foot depth

40 MM barrels in original area.

Company records show that Los Alamos could be a 100 MM barrel project if the trend extends over all of Temblor's acreage

Potential farmout to partners for initial development.

TO LEARN MORE

Energy Advisors Group

Mr. Wesley Adams

Consultant

3323 N Midland Dr Ste 113 Box 226

Midland, TX 79707

USA

Phone: 432-553-2413 and Fax: Direct: 432-553-2413 Cell Cell: 432-553-2413

Email: wadams@energyadvisors.com

**Questions Regarding This Asset?** Email [Wes Adams 432-553-2413 Cell](#)

## Related Deals



**EASTERN SHELF OPERATIONS FOR SALE**

**SHALLOW OIL PLAY**

**Code: PP 1885DV**



**MARATHON OKLAHOMA WELL FOR SALE**

**SOUTHERN OKLAHOMA HOXBAR**

**Code: PP 4345DV**



**CHOLLA SELLING GAS LEASES**

**SHALLOW GAS RESERVES**

**Code: PP 6900DV**



**MANNVILLE DEVELOPMENT**

**U MANNVILLE; REX OIL; SPIRIT RIVER**

**Code: PP 11153DV**



# EXHIBIT C



*Formerly PLS Divestment Services*

Login   

| PP | **COURT ORDERED SALE** ☆ | 🖨 |

Producing Properties
All Standard Disclaimers Apply & Seller Rights Retained

---

| **Deal Overview** | Data Room |



**CALIFORNIA PORTFOLIO FOR SALE**

3-Properties; 2-Prospects; 2-Discoveries

<u>FRESNO & MONTEREY</u>

FIVE POINTS & LYNCH CANYON FIELDS

HANGMAN HOLLOW, LANDER AVENUE,

& LOS ALAMOS PROSPECTS

2-DISCOVERIES READY TO EXPLOIT

3-D Seismic Defined. 14-Sq. Miles

15-100% OPERATED & NonOperated WI

Recently Restarted Lynch Field

Prospects Ready to Drill

Fully Automated Facilities

OOIP & OGIP: 70 MMBO & 115-265 BCF

Light Oil: 44 API. High BTU Gas

**CHAPTER 7 BANKRUPTCY**

**PP 8837DV**

Login For More Access   Contact Us

**Chapter 7 Bankruptcy Sale Process**

**Energy Advisors Group** is helping **Temblor Holdings** market their West Coast-operated & non-operated assets in Fresno & Monterey Cos., CA as part of a Judge Ordered Sale, authorized and approved by the United States Bankruptcy Court for the Eastern District of California.

The assets, a mixture of properties and prospects include enough "critical mass" that might act as a "company starter" for the right buyer or "booster asset" for another operator seeking to expand in California. In light of finding one buyer for all the assets, the Court may consider breaking up the package accordingly.

Recent Updates (5/21/21):

-Process just changed from a Chapter 11 to a Chapter 7

-The Lynch Canyon project is under new management (New Investors Bought Eagle)

-Lynch Canyon was recently restarted without steam support (Making ~150 BOPD Gross, ~20 BOPD Net)

-Hangman Hollow project just received steam injection permit.

**CALIFORNIA PROSPECTS & DEVELOPMENT OPPORTUNITIES**

5-Property Groups; 3-Properties; 2-Prospects; 2-Discoveries.

COURT ORDERED BANKRUPTCY SALE PROCESS

<u>FRESNO & MONTEREY CO</u>.,

FIVE POINTS, LYNCH CANYON, HANGMAN HOLLOW, LANDER AVENUE & LOS ALAMOS

Select Prospects & Projects Ready To Drill.

Certain Fields Are Fully Automated Facilities

3-D Seismic Defined Projects. 14-Sq. Miles Seismic Available

<u>15-100% OPERATED & NonOperated WI For Sale</u>.

OOIP & OGIP: 70 MMBO & 115-265 BCF

Premium Prices Achieved. Light Oil: 44 API. High BTU Gas

**5--ASSET GROUPS FOR SALE.**

Here are more details by individual property and prospect:




**FIVE POINTS FIELD---**

New discovery. Light oil. (44 API) production with associated high BTU gas

Seller targeting: 3 MMBO OOIP and 15 MCF OGIP

Temblor owns a 48.55% working interest with a 37.88% NRI and the project is currently shut-in.

This individual project has been fully drilled and is new purchaser needs to secure a gas reinjection permit.


The log of Witter Field shows a uniform 100-foot pay zone.



**LYNCH CANYON PROPERTY---**

Producing heavy oil field with 14.91% working Interest for sale and 12.43% NRI.

Produced 150 BOPD without steam injection in Dec '20.

Just received AFE to restart steam injection.

23 MMBO OOIP and 7.0-10 MM barrels recoverable


**HANGMAN HOLLOW FIELD---**

New discovery. One mile from Lynch Canyon.

24.44% Working Interest, 20.37% NRI

The Hangman Hollow field is currently idled pending final approval of steam injection

Temblor recently received aquifer exemption to enable steam flood injection

The estate highlights 4.0 million barrels of original oil in place and 2.0 mm barrels recoverable;


**There are 2 Prospects Ready To Drill and Develop**


**LANDER AVENUE GAS PROSPECT---**

**LOS ALAMOS PROSPECT---**

Monterey Shale Prospect w/ 700 Ft;

100% ownership position through Temblor affiliates;

Light oil column at 10,000 foot depth

40 MM barrels in original area.

Company records show that Los Alamos could be a 100 MM barrel project if the trend extends over all of Temblor's acreage

Potential farmout to partners for initial development.

TO LEARN MORE

Energy Advisors Group

Mr. Wesley Adams

Consultant

3323 N Midland Dr Ste 113 Box 226

Midland, TX 79707

USA

Phone: 432-553-2413 and Fax: Direct: 432-553-2413 Cell Cell: 432-553-2413

Email: wadams@energyadvisors.com

**Questions Regarding This Asset?** Email [Wes Adams 432-553-2413 Cell](#)

## Related Deals



**EASTERN SHELF OPERATIONS FOR SALE**

**SHALLOW OIL PLAY**

**Code: PP 1885DV**



**MARATHON OKLAHOMA WELL FOR SALE**

**SOUTHERN OKLAHOMA HOXBAR**

**Code: PP 4345DV**



**CHOLLA SELLING GAS LEASES**

**SHALLOW GAS RESERVES**

**Code: PP 6900DV**



**MANNVILLE DEVELOPMENT**

**U MANNVILLE; REX OIL; SPIRIT RIVER**

**Code: PP 11153DV**



Formerly PLS Divestment Services

Login



Energy Advisors Group offers engineering, geological and valuation services by the hour or by the project.

# EXHIBIT D

 Gmail                                                                Dan Scholefield <dan.scholefield@gmail.com>

---

## Fw: Hangman Hollow
1 message

**jeffrey vetter** <jeffreyvetter@hotmail.com>                                Tue, Sep 20, 2022 at 5:22 PM
To: Dan Scholefield <dan.scholefield@gmail.com>, Wesley Adams <wadams@energyadvisors.com>

dan:  i have not received a response to my email below.  if you intend to close the sale, payment in full must be received not later than october 13, 2022 by 5pm pst.  if payment is not received by that time - the $10k deposit of genautica oil will be forfeited to the estate.  thank you, jeff vetter

**JEFFREY M. VETTER**
**Chapter 7 Trustee**
**P.O. Box 2424**
**Bakersfield, CA 93303**
**661-809-6806**
**jeffreyvetter@hotmail.com**

---

**From:** jeffrey vetter <jeffreyvetter@hotmail.com>
**Sent:** Tuesday, September 13, 2022 11:35 AM
**To:** Wesley Adams <wadams@energyadvisors.com>; Dan Scholefield <dan.scholefield@gmail.com>
**Subject:** Fw: Hangman Hollow

dan:  the winning bidder has not performed and the sale will not be completed.  as the backup bidder, the offer of genautica oil holdings will be accepted.  please remit the balance of your bid($76,000.00) to the po box below.  please make the check payable to, "the bk estate of temblor".  thank you, jeff vetter

**JEFFREY M. VETTER**
**Chapter 7 Trustee**
**P.O. Box 2424**
**Bakersfield, CA 93303**
**661-809-6806**
**jeffreyvetter@hotmail.com**

---

**From:** Kris Pitta <kris_pitta@prudentresourcesllc.com>
**Sent:** Tuesday, September 13, 2022 6:57 AM
**To:** jeffrey vetter <jeffreyvetter@hotmail.com>; Wesley Adams <wadams@energyadvisors.com>
**Subject:** Hangman Hollow

Jeff, Wes:

I hope things are going well. We just learned from CalGEM that Hangman Hollows have to go through PAL review and injection permit is not valid. We were misled by letter sent to Steve Rowlee (Trio) in 2019 and not sharing the letter sent in 2021 by CalGEM about discrepancies of the injection permit. We will not be proceeding with Hangman Hollow anymore. I appreciate if you return our deposit $10,000. Thank you.

Thanks,
Kris K. Pitta
Founder and CEO
Prudent Resources LLC
Main: (713) 395 - 4045
Cell:   (713) 775 – 5761

# EXHIBIT E



## COURT ORDERED SALE ☆

Producing Properties
All Standard Disclaimers Apply & Seller Rights Retained



# CALIFORNIA PORTFOLIO SALE

2-Properties; 2-Prospects; 2-Discoveries
<u>FRESNO & MONTEREY</u>
FIVE POINTS FIELD,
LANDER AVENUE & LOS ALAMOS PROSPECTS
2-DISCOVERIES READY TO EXPLOIT
3-D Seismic Defined. 14-Sq. Miles
15-100% OPERATED & NonOperated WI
Prospects Ready to Drill
Fully Automated Facilities
OOIP & OGIP: 70 MMBO & 115-265 BCF
Light Oil: 44 API. High BTU Gas
**CHAPTER 7 BANKRUPTCY**
**PP 8837DV**

### Chapter 7 Bankruptcy Sale Process

**Energy Advisors Group** is helping **Temblor Holdings** market their West Coast-operated & non-operated assets in Fresno & Monterey Cos., CA as part of a Judge Ordered Sale, authorized and approved by the United States Bankruptcy Court for the Eastern District of California.

The assets, a mixture of properties and prospects include enough "critical mass" that might act as a "company starter" for the right buyer or "booster asset" for another operator seeking to expand in California. In light of finding one buyer for all the assets, the Court may consider breaking up the package accordingly.

**Recent Updates (9/6/22):**
Lynch Canyon interest recently sold.
Hangman Hollow Interest under contact.
Additional information regarding the Witter field interest added to the VDR.

<u>NOTICE OF SALE OF WITTER FIELD</u>
Date: September 14th, 2022
Time: 1:30 PM (Pacific)
Location: 2500 Tulare Street, 5th Floor
Courtroom 11, Fresno , CA
Judge: Hon. Jennifer Neimann

**See the Temblor Witter Notice of Sale in the Witter Public Sale Documents for specific bid instructions.**

Documents related to the sale are available as Item 2 in the public documents in the VDR. All bidders should do their own due diligence before participating in the sale.

**Regarding Witter Field working interest:**

Temblor sold a 10% working interest to Inproinvest in 2018. That agreement contains a "clawback" provision whereby if Inproinvest does not achieve a certain return by a certain date (which they did not), then they are assigned 10% of Temblor's working interest (or 4.856% working interest) until they achieve a certain return. Inproinvest has recorded this security.

**CALIFORNIA PROSPECTS & DEVELOPMENT OPPORTUNITIES**
1-Property; 2-Prospects.
COURT ORDERED BANKRUPTCY SALE PROCESS
FRESNO & MONTEREY CO.,
FIVE POINTS (WITTER FIELD), LANDER AVENUE & LOS ALAMOS
Select Prospects & Projects Ready To Drill.
Certain Fields Are Fully Automated Facilities
3-D Seismic Defined Projects. 14-Sq. Miles Seismic Available
15-100% OPERATED & NonOperated WI For Sale.
OOIP & OGIP: 70 MMBO & 115-265 BCF
Premium Prices Achieved. Light Oil: 44 API. High BTU Gas

**4--ASSET GROUPS FOR SALE.**
Here are more details by individual property and prospect:

**There are 2-Producing Property Projects For Sale**

**FIVE POINTS FIELD---**
New discovery. Light oil. (44 API) production with associated high BTU gas
Seller targeting: 3 MMBO OOIP and 15 MCF OGIP
Temblor owns a 48.55% working interest with a 37.88% NRI and the project is currently shut-in.
This individual project has been fully drilled and is new purchaser needs to secure a gas reinjection permit.

The log of Witter Field shows a uniform 100-foot pay zone.





**HANGMAN HOLLOW FIELD---**
New discovery. One mile from Lynch Canyon.
24.44% Working Interest, 20.37% NRI
The Hangman Hollow field is currently idled
The estate highlights 4.0 million barrels of original oil in place and 2.0 mm barrels recoverable;

**There are 2 Prospects Ready To Drill and Develop**

**LANDER AVENUE GAS PROSPECT---**
100-250 BCF of gas plus potential liquids.
Temblor owns a 45% ownership stake in the Lander Avenue prospect and seeks a partner to drill

**LOS ALAMOS PROSPECT---**
Monterey Shale Prospect w/ 700 Ft;
100% ownership position through Temblor affiliates;
Light oil column at 10,000 foot depth
40 MM barrels in original area.
Company records show that Los Alamos could be a 100 MM barrel project if the trend extends over all of Temblor's acreage
Potential farmout to partners for initial development.

TO LEARN MORE
Energy Advisors Group
Mr. Wesley Adams
VP- Business Development & Execution

VP - Business Development
3323 N Midland Dr Ste 113 Box 226
Midland, TX 79707
USA
Phone: 432-553-2413 and Fax: Direct: 432-553-2413 Cell Cell: 432-553-2413
Email: wadams@energyadvisors.com

**Questions Regarding This Asset?** Email [Wes Adams 432-553-2413 Cell](mailto:)

# EXHIBIT F

## COURT ORDERED SALE ☆



<span style="background-color: yellow">Producing Properties</span>
All Standard Disclaimers Apply & Seller Rights Retained



# CALIFORNIA PORTFOLIO SALE

2-Properties; 2-Prospects; 2-Discoveries
<u>FRESNO & MONTEREY</u>
FIVE POINTS FIELD,
LANDER AVENUE & LOS ALAMOS PROSPECTS
2-DISCOVERIES READY TO EXPLOIT
3-D Seismic Defined. 14-Sq. Miles
15-100% OPERATED & NonOperated WI
Prospects Ready to Drill
Fully Automated Facilities
OOIP & OGIP: 70 MMBO & 115-265 BCF
Light Oil: 44 API. High BTU Gas
**CHAPTER 7 BANKRUPTCY**
**PP 8837DV**

### Chapter 7 Bankruptcy Sale Process

**Energy Advisors Group** is helping **Temblor Holdings** market their West Coast-operated & non-operated assets in Fresno & Monterey Cos., CA as part of a Judge Ordered Sale, authorized and approved by the United States Bankruptcy Court for the Eastern District of California.

The assets, a mixture of properties and prospects include enough "critical mass" that might act as a "company starter" for the right buyer or "booster asset" for another operator seeking to expand in California. In light of finding one buyer for all the assets, the Court may consider breaking up the package accordingly.

<span style="background-color: yellow">**Recent Updates (9/6/22):**</span>

Lynch Canyon interest recently sold.
Hangman Hollow Interest under contact.
Additional information regarding the Witter field interest added to the VDR.

<u>**NOTICE OF SALE OF WITTER FIELD**</u>
Date: September 14th, 2022
Time: 1:30 PM (Pacific)
Location: 2500 Tulare Street, 5th Floor
Courtroom 11, Fresno , CA
Judge: Hon. Jennifer Neimann

**See the Temblor Witter Notice of Sale in the Witter Public Sale Documents for specific bid instructions.**

Documents related to the sale are available as Item 2 in the public documents in the VDR. All bidders should do their own due diligence before participating in the sale.

**Regarding Witter Field working interest:**
Temblor sold a 10% working interest to Inproinvest in 2018. That agreement contains a "clawback" provision whereby if Inproinvest does not achieve a certain return by a certain date (which they did not), then they are assigned 10% of Temblor's working interest (or 4.856% working interest) until they achieve a certain return. Inproinvest has recorded this security.

**CALIFORNIA PROSPECTS & DEVELOPMENT OPPORTUNITIES**
1-Property; 2-Prospects.
COURT ORDERED BANKRUPTCY SALE PROCESS
FRESNO & MONTEREY CO.,
FIVE POINTS (WITTER FIELD), LANDER AVENUE & LOS ALAMOS
Select Prospects & Projects Ready To Drill.
Certain Fields Are Fully Automated Facilities
3-D Seismic Defined Projects. 14-Sq. Miles Seismic Available
15-100% OPERATED & NonOperated WI For Sale.
OOIP & OGIP: 70 MMBO & 115-265 BCF
Premium Prices Achieved. Light Oil: 44 API. High BTU Gas

**4--ASSET GROUPS FOR SALE.**
Here are more details by individual property and prospect:

**There are 2-Producing Property Projects For Sale**

**FIVE POINTS FIELD---**
New discovery. Light oil. (44 API) production with associated high BTU gas
Seller targeting: 3 MMBO OOIP and 15 MCF OGIP
Temblor owns a 48.55% working interest with a 37.88% NRI and the project is currently shut-in.
This individual project has been fully drilled and is new purchaser needs to secure a gas reinjection permit.

The log of Witter Field shows a uniform 100-foot pay zone.





**HANGMAN HOLLOW FIELD---**
New discovery. One mile from Lynch Canyon.
24.44% Working Interest, 20.37% NRI
The Hangman Hollow field is currently idled
The estate highlights 4.0 million barrels of original oil in place and 2.0 mm barrels recoverable;

**There are 2 Prospects Ready To Drill and Develop**

**LANDER AVENUE GAS PROSPECT---**
100-250 BCF of gas plus potential liquids.
Temblor owns a 45% ownership stake in the Lander Avenue prospect and seeks a partner to drill

**LOS ALAMOS PROSPECT---**
Monterey Shale Prospect w/ 700 Ft;
100% ownership position through Temblor affiliates;
Light oil column at 10,000 foot depth
40 MM barrels in original area.
Company records show that Los Alamos could be a 100 MM barrel project if the trend extends over all of
Temblor's acreage
Potential farmout to partners for initial development.

TO LEARN MORE
Energy Advisors Group
Mr. Wesley Adams
VP- Business Development & Execution

VP - Business Development
3323 N Midland Dr Ste 113 Box 226
Midland, TX 79707
USA
Phone: 432-553-2413 and Fax: Direct: 432-553-2413 Cell Cell: 432-553-2413
Email: wadams@energyadvisors.com

**Questions Regarding This Asset?** Email [Wes Adams 432-553-2413 Cell](#)

# EXHIBIT G



Dan Scholefield <dan.scholefield@gmail.com>

---

## RE: Temblor Petroleum - Hangman Hollow
1 message

---

**Wesley Adams** <wadams@energyadvisors.com>                        Wed, Aug 17, 2022 at 11:42 AM
To: Dan Scholefield <dan.scholefield@gmail.com>

Dan,

Attached is Document 417 which is the offer instructions for the sale.

**Wesley Adams**

Cell: 432.553.2413

---

**From:** Dan Scholefield <dan.scholefield@gmail.com>
**Sent:** Wednesday, August 17, 2022 1:26 PM
**To:** Wesley Adams <wadams@energyadvisors.com>
**Subject:** Fwd: Temblor Petroleum - Hangman Hollow

fyi

---------- Forwarded message ---------
From: **jeffrey vetter** <jeffreyvetter@hotmail.com>
Date: Mon, Aug 1, 2022 at 5:43 PM
Subject: Re: Temblor Petroleum - Hangman Hollow
To: Dan Scholefield <dan.scholefield@gmail.com>, max gardner NEW <dmgardner@dmaxlaw.com>

dan:  see the attached doc's.

we cannot wire money.  in the alternative, please get a $10k money order/cashier's check made payable to "the bk estate of temblor".   if the service does not deliver to the po box below please let me know and i will give you a physical address.  email me a **copy of the check and the tracking number** from usps/ups/fedex and will be sufficient to allow bidding.

thank you, jeff vetter

**JEFFREY M. VETTER**

**P.O. Box 2424**

**Bakersfield, CA 93303**

**661-809-6806**

**jeffreyvetter@hotmail.com**

---

**From:** Dan Scholefield <dan.scholefield@gmail.com>
**Sent:** Monday, August 1, 2022 5:11 PM
**To:** jeffrey vetter <jeffreyvetter@hotmail.com>; dmgardner@dmaxlaw.com <dmgardner@dmaxlaw.com>
**Subject:** Re: Temblor Petroleum - Hangman Hollow

Max:

Per our phone conversation this afternoon and my prior discussions with Jeff, please forward the Declaration and the other relevant filings to me via email regarding the TEMBLOR PETROLEUM COMPANY, LLC interest in Hangman Hollow and wire instructions for the $10,000 deposit required to bid.

Thank you,

Dan Scholefield

310-924-1889

On Mon, Aug 1, 2022 at 11:17 AM jeffrey vetter <jeffreyvetter@hotmail.com> wrote:

dan:  see the attached notice.  if you intend to make an offer a deposit has to be rec'd by 8/3. thanks, jeff

**JEFFREY M. VETTER**

**Chapter 7 Trustee**

**P.O. Box 2424**

**Bakersfield, CA 93303**

**661-809-6806**

**jeffreyvetter@hotmail.com**

---

**From:** Dan Scholefield <dan.scholefield@gmail.com>
**Sent:** Tuesday, July 5, 2022 6:04 PM

**To:** jeffrey vetter <jeffreyvetter@hotmail.com>
**Subject:** Re: Temblor Petroleum - Hangman Hollow


Hangman


On Tue, Jul 5, 2022, 6:03 PM jeffrey vetter <jeffreyvetter@hotmail.com> wrote:

> What interest was it? Was it hangman hollow or Witter?
>
>
> Sent from my Verizon, Samsung Galaxy smartphone
> Get Outlook for Android
>
> ---
>
> **From:** Dan Scholefield <dan.scholefield@gmail.com>
> **Sent:** Tuesday, July 5, 2022 5:57:00 PM
> **To:** jeffrey vetter <jeffreyvetter@hotmail.com>
> **Subject:** Re: Temblor Petroleum - Hangman Hollow
>
>
> Jeff,
>
>
> Is the Temblor interest being offered/sold free of liability in the bankruptcy proceeding? An investor group would like to present an offer, but those details are necessary.
>
>
> Thanks,
>
>
> Dan Scholefield
>
>
> On Wed, Jun 22, 2022 at 4:07 PM jeffrey vetter <jeffreyvetter@hotmail.com> wrote:
>
>> dan: there is not a notice of abandonment docketed yet.  only a notice of intent.
>>
>>
>>
>>                   **JEFFREY M. VETTER**
>>
>>                      **Chapter 7 Trustee**
>>
>>                       **P.O. Box 2424**
>>
>>                    **Bakersfield, CA 93303**
>>
>>                       **661-809-6806**
>>
>>                **jeffreyvetter@hotmail.com**
>>
>> ---
>>
>> **From:** jeffrey vetter <jeffreyvetter@hotmail.com>
>> **Sent:** Wednesday, June 22, 2022 4:06 PM

**To:** Dan Scholefield <dan.scholefield@gmail.com>
**Subject:** Re: Temblor Petroleum - Hangman Hollow

dan:  tomorrow i am meeting with max gardner, the estate attorney, regarding several topics.  i should be able to get back to you by monday.  if you have not heard from me, please email.  max is copied on this email.  thanks, jeff

### JEFFREY M. VETTER

**Chapter 7 Trustee**

**P.O. Box 2424**

**Bakersfield, CA 93303**

**661-809-6806**

**jeffreyvetter@hotmail.com**

---

**From:** Dan Scholefield <dan.scholefield@gmail.com>
**Sent:** Wednesday, June 22, 2022 3:59 PM
**To:** jeffreyvetter@hotmail.com <jeffreyvetter@hotmail.com>
**Subject:** Re: Temblor Petroleum - Hangman Hollow

Hi Jeff,

I'm following up on my email of last week. You were going to email me a copy of the Temblor Petroleum abandonment notice; is it possible for you to do that? We would like to submit an offer to purchase the Temblor Interest.

Many thanks,

Dan Scholefield

On Thu, Jun 16, 2022 at 7:00 AM Dan Scholefield <dan.scholefield@gmail.com> wrote:

Dear Mr. Vetter,

Thank you for your time and for forwarding the abandonment notice discussed in our phone conversation yesterday, Wednesday June 15, 2022, regarding the Temblor Petroleum Company, LLC oil and gas working interest in the Hangman Hollow Field located in Monterey County, California.

Case 20-01507-ABA Document 9 Filed 04/12/23 Page 87 of 90

As a working interest partner in the field, Genautica Oil Holdings would like the opportunity to bid on Temblor's interest. Any information you can forward regarding the status of proceedings is greatly appreciated.

Sincerely,

Dan Scholefield

Genautica Oil Holdings GP, LLC

Managing Member

(310) 924-1889

---

 **temb notice Doc 417.pdf**
1001K

# PROOF OF SERVICE

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
10100 Santa Monica Blvd, Suite 1400, Los Angeles, CA 90067

A true and correct copy of the foregoing document EXHIBITS TO DECLARATION OF DAN SCHOLEFIELD IN SUPPORT OF MOTION OF GENAUTICA OIL HOLDINGS, LP TO VACATE SALE ORDER, AS AMENDED will be served or was served (a) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On February 2, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Leonard K. Welsh on behalf of Debtor  TEMBLOR PETROLEUM COMPANY, LLC
lwelsh@lkwelshlaw.com; nmarin@lkwelshlaw.com

D. Max Gardner on behalf of Trustee Jeffrey M. Vetter
jeffreyvetter@hotmail.com; CA97@ecfcbis.com

D. Max Gardner on behalf of Trustee Jeffrey M. Vetter
dmgardner@dmaxlaw.com

Office of the U.S. Trustee
ustpregion17.fr.ecf@usdoj.gov

D. Keith B. Dunnagan on behalf of Creditor  California Energy Exchange Corporation
kbdunnagan@bpelaw.com; sarahm@bpelaw.com

Leena M. Sheet on behalf of Creditor  California State Lands Commission
Leena.Sheet@doj.ca.gov

Donald C. Oldaker on behalf of Creditor  Eagle Petroleum Monterey, LLC
doldaker@clifford-brownlaw.com; kmharleston@clifford-brownlaw.com

Hyun Suk Choi on behalf of Creditor  Eagle Petroleum Monterey, LLC
hchoi@choiandpark.com; lkleist@choiandpark.com

Donald C. Oldaker on behalf of Creditor  Eagle Petroleum, LLC
doldaker@clifford-brownlaw.com; kmharleston@clifford-brownlaw.com

Hyun Suk Choi on behalf of Creditor  Eagle Petroleum, LLC
hchoi@choiandpark.com; lkleist@choiandpark.com

Hyun Suk Choi on behalf of Creditor  Hanwha Resources (USA) Corporation
hchoi@choiandpark.com; lkleist@choiandpark.com

Chris D. Kuhner on behalf of Creditor  Inproinvest, LLC
c.kuhner@kornfieldlaw.com

John J. Harris on behalf of Creditor  Kings County Development Limited
jharris@cassosparks.com; ldominguez@cassosparks.com

Thomas R. Phinney on behalf of Creditor  Paul Graham Drilling
tom@parkinsonphinney.com; allison@parkinsonphinney.com

Michael N. Mills on behalf of Creditor  Petro-Lud, Inc.
michael.mills@stoel.com; tammy.ross@stoel.com

Ashley Teesdale on behalf of Creditor  Primoris Build Own and Operate LLC
ashley@ringstadlaw.com

Paul R. Glassman on behalf of Interested Party  Genautica Oil Holdings, LP
pglassman@stradlinglaw.com; cpesis@stradlinglaw.com

Justin C. Valencia on behalf of U.S. Trustee Tracy Hope Davis
justin.c.valencia@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL:**  On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows:

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows:

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 2, 2023 | Christine Pesis | */s/ Christine Pesis* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

# PROOF OF SERVICE

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
10100 Santa Monica Blvd, Suite 1400, Los Angeles, CA 90067

A true and correct copy of the foregoing document DECLARATION OF PAUL GLASSMAN IN SUPPORT OF NOTICE OF INDICATIVE RULING AND *EX PARTE APPLICATION* FOR REMAND TO THE BANKRUPTCY COURT AND TO CONTINUE THE BRIEFING SCHEDULE will be served or was served (a) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On April 12, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **D Max Gardner**
  dmgardner@youngwooldridge.com
- **Paul R. Glassman**
  pglassman@stradlinglaw.com
- **Office of the U.S. Trustee (Frs)**
  ustpregion17.fr.ecf@usdoj.gov
- **Leonard K. Welsh**
  lwelsh@lkwelshlaw.com,tlidgett@lkwelshlaw.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL:**  On April 13, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows:

Trio Petroleum LLC
Steven A. Rowlee, Vice President
5401 Business Park South, Suite 115
Bakersfield, CA 93309-0713

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows:

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 12, 2023 | Christine Pesis | */s/ Christine Pesis* |
| --- | --- | --- |
| *Date* | *Printed Name* | *Signature* |